### R. C. NETTLES v. JOSEPH T. SOMERVELL.

#### No. 608.

1. **Amendment.** — In a suit for libel the complaint was that plaintiff was published in a list of persons who, though able, would not pay their debts, and were unworthy of trust or credit. By amendment the occupation of plaintiff was stated, and additional parts of the alleged publication inserted. *Held*, that the new matter only brings out more clearly the original cause of complaint, and does not allege a new ground of action.

2. **Truth a Defense.** — There is no question that the truth of an alleged libel may be set up and proved as a complete justification and defense.

3. **Same—Pleading.**—The plea is generally broad enough if it merely state that the matter charged to be libellous is in fact true. When the libel is of a general character the plea of justification must set up the facts which make the character in question. See example.

4. **General Reputation.**—Suit for libel, alleging that the defendant had charged the plaintiff with want of honesty, etc., in business dealings. *Held*, that the character of the investigation can not be ignored in determining what is material testimony as to reputation. The inquiry, however, must be confined to the general reputation as to the particular quality of character that is in issue.

5. **Charge — General Topics.** — It is not good practice to give in charge general principles of law unless called for by the facts of the case. See faulty charge in this respect.

6. **Libel—Practice.**—Suit for libel for circulating a writing libellous per se. In such case the amount of damages is to be fixed by the jury from the circumstances in evidence; the defense, however, is made out if the truth of the alleged libellous matter be proved, if the libel did not apply to the plaintiff, or if not made, authorized, or uttered by the defendant.

7. **The United States and Canada Protective and Detective Association.** — The pamphlet circulated by this association is libellous as against the individuals named therein. See opinion for details. The court could not instruct the jury that the language and publication were harmless.

APPEAL from McLennan. Tried below before Hon. L. W. GOODRICH.

*Baker & Prendergast,* for appellant.—1. In a damage suit for libel, defendant can set up by pleading and prove by evidence, that the pub-

lication was made in good faith without malice, and upon the advice and after taking the advice of an attorney, in mitigation of damages, if for no other purpose. Ramsey v. Arrott, 64 Texas, 320; Railway v. James, 73 Texas, 12; Shannon v. Jones, 76 Texas, 149; Jacobs v. Crum, 62 Texas, 401.

2. The truth is a complete and perfect defense to a suit for damages for libel. Patten v. Belo, 79 Texas, 46; Kuhn v. Young, 78 Texas, 344; 71 Texas, 645; Express Co. v. Copeland, 64 Texas, 355; Cotulla v. Kerr, 74 Texas, 95; Towns. on Slander and Libel, 327.

*Jones, Kendall & Sleeper*, for appellee.—1. Allegations in an amended petition based on the same cause of action as that set up in the original petition, and which merely enlarge the original statement of the cause of action, do not constitute a new cause of action. Zeliff v. Jennings, 61 Texas, 458; Tel. Co. v. Brown, 62 Texas, 536; Ross v. Kornrumpf, 64 Texas, 393; Killebrew v. Stockdale, 51 Texas, 529; Lewis v. Dennis, 54 Texas, 490; Stark. on Slander and Libel, sec. 481.

2. A plea of justification in bar for an action of libel must be as broad as the charge that is attempted to be justified. And when the charge is, that "plaintiff was and is a notorious dead beat, who has no shame or self-respect, and has ruined what credit he once had, and did not and does not wish to pay his just debts," none of the acts alleged in defendant's answer constitute such justification. Towns. on Libel and Slander, secs. 212, 355; Stark., notes to sec. 338; Newell on Def. and Slander, 796; Odgers on Libel, secs. 169, 170, 174; King v. Root, 21 Am. Dec., 107.

3. While as a rule it is conceded that the truth of the matter published may be shown as a complete defense to an action of libel, yet when the charge alleged is general, as that the defendant is a "notorious dead beat, who has no shame or self-respect," etc., and the plain object of the publication, as shown by the allegations of the plaintiff's petition and the defendant's answer, is to collect an alleged debt from the plaintiff by unlawful means, the fact that the plaintiff has contracted other debts and has not paid them, is no justification of such publication. Muetze v. Tueteur, 77 Wis., 236; The State v. Armstrong, 106 Mo., 395; Wilson v. Nooman, 27 Wis., 598; Campbell v. Campbell, 54 Wis., 90.

COLLARD, ASSOCIATE JUSTICE.—This is a libel suit, brought by appellee, Joseph T. Somervell, on the 2nd day of October, 1888, against the appellant, R. C. Nettles, charging that Nettles procured and caused plaintiff's name to be listed in a certain small printed paper-back pamphlet issued by an association styled "The United States and Canada Dealers Protective and Detective Association," which book purported to publish a list of names of persons who will not pay their honest debts, and who are unworthy of credit and trust.

A part of the pamphlet is copied in the petition, a portion of that part under the head of "Introduction," which recommends the system as being the best known to collect "old, slow, and outlawed claims," characterizing the person so listed as one who will not pay his just debts and as a dead beat, and declaring that "he neither pays you [the creditor] his old account nor purchases goods from you now, but spends his money elsewhere; and any friend he has is either like him, or, if an honest man, prefers to see you paid." The introduction shows the object of the association to be to collect debts by publishing delinquent debtors, and declares, as alleged, "Our system is intended for such as can pay but do not."

The petition alleges, that the introduction to the pamphlet contains much other libellous and slanderous matter applying to plaintiff, whose name is printed in the list of persons who are dead beats and delinquents. It also explains the meaning of the term "dead beat" and other terms and expressions, and as to the whole publication declares: "That by this publication is meant, and it was so understood by all persons who read it, that he was guilty of evil, corrupt, dishonest practices, and that he was not worthy of trust or credit. The said pamphlet was circulated and published to and among a large number of citizens, merchants, and business men, with whom he was accustomed to trade with advantage and profit, in McLennan and other counties in Texas, and read and understood by them, and by reason thereof they were induced to believe and think that he was a dead beat, and was guilty of evil, dishonest, and corrupt practices, and that he would fraudulently, willingly, wantonly, and knowingly contract and incur debts and liabilities which he never intended to pay or meet, and that the natural tendency of said publication was to bring him into disgrace and shame as a member of society, and into contempt among honorable men; and by reason thereof said persons suspect and believe he is dishonest and will not pay his just debts, and is unworthy of trust and credit, and have and hold him in contempt and refuse him credit, to his damage $20,000."

The petition at the outset showed that plaintiff had and enjoyed among his neighbors and acquaintances and persons with whom he dealt and traded in Falls County and other counties in the State, a good name, fame, and credit, before the publication of the alleged libel, as a man who was willing and desirous of paying his just debts and liabilities that he might incur. The allegations of malice and falsity of the libel are full. The petition lays the time of the libel and publication "on November 1, 1887, and divers days thereafter."

On April 6, 1889, plaintiff filed an amended petition, alleging the facts substantially as in the original petition, and stating more particularly the causes of his complaint, laying the time of the libel and its publication on the 1st day of November, 1887, "and on divers days thereafter and on divers days prior thereto."

Defendant excepted to the particulars set up in the amended petition not stated in the original petition, because they stated a new cause of action, and were barred by the statute of limitation of one year at the time the amendment was filed, and now insists that the court erred in overruling his exceptions.

Verdict and judgment for plaintiff for $1 actual and $599 exemplary damages were rendered. Defendant has appealed.

*Opinion.*—In our opinion the amendments amount to nothing more than a more definite and elaborate statement of the cause of action originally declared on.

For instance, the statement in the amendment that plaintiff was a land and collecting agent, doing business in Falls and surrounding counties for loan and mortgage companies, to loan and collect money for his patrons on commission, a business that required that he should have a good character for honesty and integrity, etc., was not a statement of a new cause of action. It was only a more specific statement of matter that had before been alleged.

In another part of the introduction to the pamphlet was the form of a notice sent to the reported and delinquent debtor from the main office at Chicago, giving the information that the person addressed was reported as refusing to pay a just debt, urging him to a settlement with his creditor, informing him of the consequences of a final refusal—that his name would be carried on the published reports of the association as a delinquent.

The notice contained the following: "A great many have allowed their names to be entered in this list who can not afford it, but have been careless about meeting their obligations. There are also some notorious dead beats who have no shame or self-respect, and who have ruined what credit they once had, and do not wish to pay their just debts. In all kindness, we ask to which class do you belong? These lists are revised and issued at regular intervals repeatedly; every day brings notices of some having paid up, and their names are dropped from the list and their credit is restored. Would it not be well for you to arrange a settlement with the party you owe before * * * and let us drop your name from the list? If the amount is large, pay a part now and arrange for the balance, and see that the member advises this office at once. We do not wish to enter upon this association bad debt notices nor any more annoying system."

This notice was not set out in the original petition, but is in the amendment, with innuendoes applying its terms to plaintiff.

We do not think it constitutes a new cause of action. It is upon the same subject, and merely serves to state more fully the object and plan of operations of the company. It amplifies and explains what was at first alleged. The gist of the complaint is, that plaintiff was published in a

list of persons who, though able, would not pay their debts, and were unworthy of trust and credit. The new matter only brings this cause of complaint out more clearly. In our opinion, the amended petition does not set up a new cause of action. Railway v. Richmond, 73 Texas, 568; Sinclair v. Dalien, 73 Texas, 73; Behee v. Railway, 71 Texas, 424.

Defendant pleaded justification in general terms, as follows: "And further, defendant says it is true that plaintiff was on and before November 1, 1887, and is now, a delinquent, and that he was then and is now unworthy of trust and credit; and that he would not then pay his just debts, and that he was then and is now unworthy of trust and credit; and that he would on and before said date contract debts and refuse and fail to pay them; that plaintiff was on and before said date a person who could pay his debts, but did not; and was on and before said date a dead beat and a notorious dead beat, who had no shame and self-respect, and who had ruined what credit he once had, and did not wish to pay his just debts; for that," etc.

Here follows a number of particular alleged instances, acts of plaintiff, which show the character attributed to him.

The court below sustained exceptions to the entire plea of justification, upon which error is assigned.

There is no question that the truth of the alleged libel may be set up, and if proved is a complete justification and defense. Patten v. Belo, 79 Texas, 46; Cotulla v. Kerr, 74 Texas, 90; Towns. on Slander and Libel, sec. 211.

The plea is generally broad enough if it merely state that the matter charged to be libellous is in fact true. When, however, the libel is of general character—as that a person is a thief, a murderer, or a man unworthy of credit—the plea of justification must set up the facts which make such a character. Kuhn v. Young, 78 Texas, 346; Towns. on Slander and Libel, secs. 211–213.

The acts of plaintiff specially set up in the answer as showing the truth of the charge, are pertinent to the issue, and if true may be construed by the jury as establishing the truth of the alleged libel. The jury may not so construe them, but the acts specified would be admissible as tending to establish the issue of truth. They are that class of acts which go to make the character imputed to plaintiff in the alleged libellous language and innuendos.

We need not set out these alleged special acts in this opinion. We have carefully examined and considered the allegations of the plea, and must hold that the learned trial judge erred in sustaining the exception to the plea.

We do not think it was error to admit proof by plaintiff of his general reputation for honesty and integrity of character in the community in

which he lived or the circle in which he moved, on and before November 1, 1887.    2 Greenl. on Ev., sec. 419; Towns. on Slander and Libel, secs. 407, 408.

Appellant says it was error to allow witness Baker to testify as to such general reputation, because he had not proper knowledge of the matter· inquired about.    He testified on direct examination that he knew such general reputation of plaintiff on and prior to November 1, 1887, and on cross-examination that he moved to Marlin, where plaintiff lived, in November, 1887.    Prior to that the witness had lived at Durango, sixteen miles from Marlin, and while living at Durango, "I did not know what· plaintiff's reputation was.    I learned all I knew of it after I moved to Marlin.    I have never heard any one speak of or discuss his reputation."

The weight and value of this testimony were for the jury, and not the court.    The amount of information of a witness upon the subject, what the extent of one's neighborhood is, the territory of his reputation where it could be injured, and such questions, depend upon the circumstances· of the case, the matter involved in the suit.

Plaintiff claimed that he had a good reputation in Falls, adjoining, and other counties in the State.    What that reputation was in the matters controverted, and to what extent it was injured, was the question to be determined by the jury.    The nature of the case, the character of the investigation, can not be ignored in determining what is and what is not. material as to reputation.    The inquiry must be confined to the general reputation as to the particular quality of character that is in issue.

As we understand the law, the testimony objected to and all such testimony was admissible, its weight and force to be decided by the jury.

The court instructed the jury, among other charges, that " It is a fundamental principle of our laws, that no .citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or be in any manner disfranchised, except by due course of the law of the land; and any act done by another, not in due course of law, which tends to deprive a person of the equal enjoyment of these rights is wrongful, and the person so injured has a right of action and may recover damages· therefor.

" By the phrase ' due course of law,' as here used, is meant a proceeding in which the adversary parties have a right to be confronted ·by the witnesses against them, and to have the issues between them tried by a jury in a due and orderly manner as provided by law."

This charge is not reversible error, unless it is argumentative.    Abstractly it is the law, but its application to the case is doubtful.    It was. not a necessary charge, and, in our opinion, should have been omitted.

Upon another subject assigned as error, we are of opinion that the publication of plaintiff, with the object and in the manner stated, was libel-

lous per se; the damages, whether only nominal or more, would depend upon the circumstances of aggravation and extent of the injury. This should be qualified to the extent, that if the charges made were true plaintiff could not recover. Or if the libel did not apply to plaintiff, he could not recover. If defendant did not cause or procure the publication as alleged to be made, he would not be liable. These questions should be submitted to the jury.

The court should not have given the special charge, requested and refused, that "there was no evidence to show that defendant was the publisher of the pamphlet." If he authorized it or procured it, he would be responsible for the consequences, unless it stated facts truly.

And the court did not err in refusing special charge, that there was no evidence that defendant authorized or knew that the language in the pamphlet would be published. The jury may have concluded from the facts that defendant, with knowledge of the company's methods of collecting debts by such publishing of persons (debtors), sought and procured the publication by the company.

It would not have been proper for the court to have construed to the jury the meaning of the alleged publication, and there was no error in refusing the special charge of defendant, to the effect that the language and publication were harmless.

We have noticed all the assignments of error properly brought to our attention, except as to repetitions in the court's charge of the same principle, and some other minor matters which will not occur upon another trial; and conclude that the judgment of the court below should be reversed and the cause remanded, upon the ground that the truth of the libel was properly in issue as a complete defense to the action, and that such plea should have been heard.

*Reversed and remanded.*

Delivered March 14, 1894.