HOUSTON CHRONICLE PUB. CO. v. TIERNAN.   (No. 6730.)

(Court of Civil Appeals of Texas.   Galveston. Dec. 1, 1914.)

1. EVIDENCE (§ 106*)—RELEVANCY—CHARACTER.

Plaintiff, in an action for libel, may prove good character, if the publication of which he complains is an attack on his character, or such an attack is made in defendant's pleading, or the nature of the action involves his character; and where defendant's published article charges plaintiff and his wife with malpractice, barratry, and extortion, and that they would be called to defend disbarment proceedings, and indirectly charged them with being criminals, and defendant, in his answer, alleged that the charges were true, testimony of plaintiff that he had held several offices in city named, and that up to the time of the publication he and his wife were of good character as lawyers and persons, was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

2. WITNESSES (§ 350*)—CHARACTER—ADMISSIBILITY OF EVIDENCE.

It is improper to attempt to impeach a witness by asking him on cross-examination if he had been arrested in a city named on a charge of misdemeanor theft.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1140–1149; Dec. Dig. § 350.*]

3. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Error in allowing witness to be improperly cross-examined as to his character held not harmless error, where, if the witness' testimony had been believed by the jury, plaintiff's cause of action would have been partially defeated, and the rendition of a large verdict indicates that the jury did not believe the witness' testimony.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.*]

4. LIBEL AND SLANDER (§ 42*)—PRIVILEGED PUBLICATION.

Rev. St. 1911, art. 5597, §§ 3, 4, make the impartial account of public meetings, and the reasonable comment on the official acts of public officers, and the other matters of public concern

published for general information, privileged. *Held*, that an account of disbarment proceedings, in which defendant stated what the evidence which had not been made public would show, are not privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 127–129; Dec. Dig. § 42.*]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by R. H. Tiernan against the Houston Chronicle Publishing Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hunt, Myer & Teagle, of Houston, for appellant. Stevens & Stevens, of Houston, for appellee.

McMEANS, J. R. H. Tiernan brought this suit against the Houston Chronicle Publishing Company for damages, alleging that said company had published in its newspaper, known as the Houston Chronicle, which has a large circulation, certain libelous statements of and concerning plaintiff, R. H. Tiernan, and his wife, Alice S. Tiernan. The petition contained the usual averments of good character and reputation of the plaintiff and his wife, and alleged that they were engaged, at the time of the publication, in the practice of the law in the city of Houston. He further alleged that, on the dates hereinafter stated, the defendant published the following articles of and concerning plaintiff and his wife, which were alleged to be untrue, libelous, and defamatory, viz.:

That on October 5, 1912, it published the following:

"Tiernans, husband and wife, are to face the local bar. Charges of malpractice filed and general denial made. Mrs. Tiernan one of the first women lawyers in Texas. Charges of malpractice were pleaded Saturday before the Harris County Bar Association against R. H. and Alice Tiernan, members of the Houston bar. The complaint against Mr. and Mrs. Tiernan is signed by Clarence Kendall, assistant prosecuting attorney, and by attorney R. V. Solomon. It is as follows: 'October 5, 1912. Judge A. E. Amerman, President Harris County Bar Association: We, the undersigned, are in possession of sufficient evidence of malpractice on the part of R. H. and Alice S. Tiernan which we think would disbar them from the further practice of the high profession of which we are members, and ask that you, as president of the Harris county bar association, call a meeting of same at once to consider the evidence we have, and if sufficient, to institute disbarment proceedings.' The evidence has not been made public, but it is said to consist of affidavits and will charge that Mr. and Mrs. Tiernan have solicited practice at both the city and county jails and have extorted money from clients. It will also be charged that they have received pay for services which they have not performed."

The petition further alleged that on the 9th day of October, 1912, the defendant published the following:

"Tiernan case with committee. Whether or not R. H. and Alice S. Tiernan, lawyers of Houston, will be called upon to defend their right to practice law at Houston will be decided by a committee of attorneys. More than fifty lawyers attended the meeting in the county court room to hear the evidence against the Tiernans. Mr. Kendall read the affidavits that have been collected from persons who have had professional dealings with the Tiernans. He urged that disbarment proceedings be instituted."

Plaintiff further alleged that on the 5th day of November, 1912, the defendant also printed and published in its said newspaper the following article:

"Bar association committee divided on barratry charge. Majority report against Mrs. Tiernan is adopted, while minority questions jurisdiction of association. Mrs. Alice S. Tiernan, one of the first women in the South to be admitted to the bar, must stand trial on the charge of barratry. Her husband, R. H. Tiernan, will not be placed on trial on the initiative of the bar association, according to the report, because the direct evidence against him was upon immaterial, irrelevant, and collateral facts. Mrs. Tiernan, however, must answer the charge of barratry preferred by the district attorney. The action was taken at a meeting of the Harris County Bar Association last night, at which meeting it was the unanimous sentiment that the local bar should be purged of all members found guilty of barratry or unethical conduct. 'A majority of your committee appointed to investigate certain charges on the part of R. H. and Alice S. Tiernan make the following report: Several affidavits and some oral statements were made to us, but none of them, with the exception hereafter stated, was direct evidence, but as a rule was hearsay upon any material fact, and if we had any direct evidence it was upon immaterial and irrelevant and collateral facts. Mrs. H. A. Clark, wife of H. A. Clark, and Percy Antill made statements from their own knowledge which, if true, shows a clear case of barratry against Alice S. Tiernan, but not against R. H. Tiernan.' The majority report was adopted by the association and the president, A. E. Amerman, was empowered to make a committee to file the affidavits embodying the charges against the Tiernans and to lend whatever assistance is needed by the district attorney; and likewise a committee to institute disbarment proceedings in the district court. 'Warning to lawyers. As you will see it is a criminal offense if an attorney at law shall seek to obtain employment in any suit or case at law or in equity to prosecute or defend the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such cases. And the charges which were investigated by your committee were that the attorneys at law named had solicited employment. We are calling attention to this statute so that the Harris County Bar Association will put people on notice that any lawyer who solicits employment or does any of the other acts prohibited by the above-quoted article of the Penal Code is a violator of the law himself, and is a criminal, and therefore any one who employs him, knowing that the lawyer is violating the law, must understand that when he employs a lawyer under such circumstances that he (the culprit) is employing a law breaker and criminal to represent him in his business.'"

Certain other allegations with respect to other alleged libelous publications were stricken out upon exceptions of defendant, and these allegations have not been set out in this statement.

The petition then alleged that all of the charges set forth in said publication were false, and that said false and opprobrious charges and insinuations had discredited the plaintiff and his wife before the public and in-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

jured them in their profession, and had caused them to suffer great humiliation, injury to their law practice, good name, credit, and reputation, and prayed for $25,000 as actual damages and a like sum as exemplary damages.

The defendant answered by general denial, and specially pleaded that the publications complained of were a fair, true, and impartial report of the proceedings of a judicial nature in a court of record, and were therefore privileged matters. It further pleaded that the matters and things which it published, as charged by the plaintiff, were a true, fair, and correct report of the proceedings instituted against plaintiff and his wife before the Harris County Bar Association; that the plaintiff and his wife, as attorneys, were officers of the various courts of Harris county, and that their demeanor, as attorneys at law, was subject to the supervision and regulations of said courts, and that all matters and things set out in said publications were true; that the plaintiff and his wife had solicited legal employment; and that they had obtained money from clients for which they had given no services, among others from one A. Rindkoff.

The case was tried before a jury and resulted in a verdict and judgment for plaintiff for $15,000, from which the defendant has appealed.

[1] The plaintiff was permitted to testify, over the objection of defendant, that many years ago he had held several offices in Galveston, and that:

"Up to the time of the publication complained of, my wife and I were reputed of good name and character and reputation. We were of good reputation as lawyers and persons."

Appellant, by its first assignment of error, complains that the court committed prejudicial error against it by admitting this testimony. The contention advanced by the proposition under this assignment is that:

"In an action for libel, a plaintiff is not permitted to introduce evidence of his good character and general reputation, and the fact that he has been an office holder, unless his reputation has been first attacked by the defendant."

Subject to certain explanations, we can readily agree with this contention. We do not understand that the attack by the defendant upon the character or general reputation of the plaintiff, in order to admit such proof as here complained of, must be made through witnesses placed upon the stand at the trial. It is enough that the publication against which the defendant is called to answer is itself such an attack, or that such an attack is made by the defendant's pleadings, or that the nature of the action involves the general character of a party or goes directly to affect it. Houston Electric Co. v. Faroux, 125 S. W. 924, and authorities cited; Nettles v. Somervell, 6 Tex. Civ. App. 627, 25 S. W. 658; Timmony v. Burns, 42 S. W. 134; King v. Sassaman, 64 S. W. 937.

The publications above set out in effect charged the plaintiff and his wife with malpractice, with barratry and extortion. They also charged plaintiff and his wife would be called upon to defend disbarment proceedings because of their unprofessional dealings with their clients. It was stated that Alice S. Tiernan was guilty of barratry, which offense was defined, and, under the caption of "warning to lawyers," the people were put upon notice that any lawyer who solicited employment or was guilty of other acts prohibited by the law denouncing barratry is a violator of the law and a criminal, and thus indirectly charged that plaintiff and his wife were criminals and no better than the violators of the law who employed them. Appellant, in its answer, alleged that all these charges were true. We think that not only the charges contained in the publications, but the allegations that they were true, involved the general character of the plaintiff and his wife and rendered the evidence complained of admissible.

One of the charges contained in the publications was that plaintiff and his wife received money from clients for services they never thereafter performed. The defendant in its answer averred the truth of this statement, and specifically alleged that plaintiff and his wife "had obtained money from clients for which they had received no services, among others, one A. Rindkoff." On this material issue the witness Rindkoff was placed on the stand and testified: That he employed plaintiff, R. H. Tiernan, to bring suit in his behalf to recover an indebtedness of $10.40 due him, and paid $5 at the time for his services in the matter. That said plaintiff told witness to call again the following week, and that he did so, and was then told by plaintiff he wanted $4 more to deposit as security for costs, and that witness gave him this additional sum. That after three or four weeks had passed, and he had heard nothing from the plaintiff, he called at his office, and that the lady in the office (Mrs. Tiernan) showed him on the calendar that the case would be tried on the 10th of the following month. That he returned to plaintiff's office on that date, and the lady was not there, but that Mr. Tiernan was, and told him it was a mistake, and that the case would be tried the next week, on Monday, about 9 o'clock. That he returned on the day and at the hour indicated, and that the lady told him the defendant's lawyer was sick and to come on Monday of the next week, when he did, and was then told by plaintiff to come on Monday of the following week, and when he did so was told the judge was taking his vacation, and that plaintiff would let him know when the judge returned. That after two months had passed, and he had heard nothing further from plaintiff, he went again to see about it, and that plaintiff told him he had lost the papers. That he

went to the justice court, and upon inquiry learned that the suit never had been filed, and he then asked plaintiff which court the case was filed in, and that plaintiff told him he did not remember. That he then demanded of plaintiff the money he had paid him, and plaintiff said he did not have it "this week, and next week I will bring it down to your place," but that witness told plaintiff he would call for it, and plaintiff told him to call the following Tuesday, which he did, but was then told by plaintiff that he had so many bills to pay he could not pay witness then, but would pay him the following week, but that he never did pay him either the $5 paid by him as a fee or the $4 advanced for costs.

[2] After the witness had thus testified, he was asked on cross-examination by plaintiff's attorney if it was not a fact that he (the witness) had been arrested in the city of Houston on a charge of misdemeanor theft, to which the witness answered in the affirmative. The question was objected to on the ground that the testimony was inadmissible for the purpose of impeachment, and that it was not a proper method of impeaching the witness, which objection was overruled and the answer admitted, to which action defendant seasonably preserved a bill of exceptions and presents the question for our determination by its second assignment of error. We are of the opinion that the court erred in admitting the testimony over the objection urged. Railway v. Creason, 101 Tex. 335, 107 S. W. 527; Railway v. Roberts, 144 S. W. 691; McDonald v. Humphries, 146 S. W. 712.

[3] Whether the error is such as to require a reversal depends upon whether it was reasonably calculated to cause and probably did cause the rendition of an improper judgment either upon the question of liability or upon the amount of the verdict. Appellee contends that the error is harmless, for the reason that the plaintiff Tiernan admitted in his testimony that he did receive the sums from Rindkoff and that he failed to render the service for which he was employed. We find from the statement of facts that he did make such admission. He testified in substance: That when Rindkoff gave him the employment and paid him the sums of money testified to by Rindkoff, $5 of which he received as a fee and $4 to be deposited as security for costs, he made a memorandum relating to the case and put it in a drawer of his desk, intending to give it proper attention, but that he thereafter forgot all about it, and that, when Rindkoff called at his office several months later to inquire about the case, he did not remember anything about it, and had forgotten Rindkoff, and had to ask his name. That he repaid Rindkoff the $5 fee, and later went to the latter's place of business and tendered him the other sum, but that Rindkoff told him he wanted $25, and

171 S.W.—35

that if he (plaintiff) did not pay him that sum he would have him disbarred. That he (plaintiff) declined to pay the amount demanded, and that Rindkoff refused to accept the $4.

The charge made by the publications that plaintiff and his wife had received pay for services which they had not performed carried with it more than a charge of simple neglect to render a service for which compensation had been made, but that the act was opprobrious and involved turpitude. It was seemingly so understood by defendant, and the general charge was reiterated in its answer, and the transaction between plaintiff and Rindkoff was specially instanced as one of the opprobrious acts of this nature of which the plaintiff had been guilty. If Rindkoff's testimony was true, the charge was fully sustained, because no one reading his testimony could conclude therefrom that plaintiff's failure to discharge the service for which he was employed was the result of mere neglect or forgetfulness. The only admission by plaintiff was that he received the money but failed to perform the service, and he explains his conduct in this regard by saying that he forgot it. He contradicts Rindkoff as to the repayment of the $5, and explains his failure to pay the other sum by saying that Rindkoff demanded $25 and threatened to have him disbarred if he did not pay it. If Rindkoff's testimony was believed by the jury, then so much of plaintiff's cause of action as was based on the charge of his having received pay for services which he willfully failed to perform was defeated, and no recovery therefor could be sustained. If the jury did not believe Rindkoff, then they had the right to return a verdict against defendant for such sum as they reasonably believed, from the testimony, the plaintiff had been damaged by the publication of such a charge. In view of the large verdict which was rendered for plaintiff, we think it is reasonably probable that the jury discredited Rindkoff's testimony and allowed damages for the publication of this charge, which they could not have done, had his testimony been believed to be true. In these circumstances, we think the error in admitting the testimony objected to was calculated to cause and probably did cause the rendition of an improper judgment, and that for such error the judgment must be reversed.

[4] Under its fifth and sixth assignments of error, appellant advances the proposition that the publications complained of were privileged under sections 3 and 4 of article 5597 of the Revised Statutes of 1911, which defines libel, and by said assignments complains of the refusal of the court to give its special charges 4 and 5, which were intended to so instruct the jury. The sections referred to, defining what matters shall be privileged, are as follows:

"(3) A fair, true and impartial account of public meetings, organized and conducted for public purposes only.

"(4) A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

Without entering into an extended discussion of the questions presented by the assignments, it is our opinion that the publications do not fall within either of the exceptions defining what matters are to be deemed privileged. Belo v. Wren, 63 Tex. 724; Knapp & Co. v. Campbell, 14 Tex. Civ. App. 199, 36 S. W. 765. Aside from the report of the bar proceedings, the publications contained statements which by no reasonable construction can it be said were other than statements of its own, viz.:

"The evidence collected has not been made public, but is said to consist of affidavits and will charge that Mr. and Mrs. Tiernan have solicited practice at both the city and county jails and have extorted money from clients. Charges of extorting money from ignorant immigrants were filed several weeks ago with the authorities at Washington by M. Arthur Kuykendall, the local immigration inspector, against Mr. and Mrs. Tiernan."

The assignments are overruled.

The only other assignments presented by appellant complain of the size of the verdict and of the failure of the court to grant a new trial on account of newly discovered evidence. As the judgment must be reversed, it would serve no useful purpose to discuss either of these assignments.

For the error indicated the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.