## HOUSTON v. INTERSTATE CIRCUIT, Inc., et al.

### No. 10968.

Court of Civil Appeals of Texas. Galveston.

Oct. 12, 1939.

Rehearing Denied Nov. 2, 1939.

904

Joe H. Eagle and Fitzpatrick & Wells, all of Houston, for appellant.

Lester Settegast, of Houston, amicus curiæ.

Baker, Botts, Andrews & Wharton, Paul Port, and Tom Scurry, all of Houston, for appellees Interstate Circuit, Inc., and Republic Pictures Corporation of Texas.

W. P. Hamblen, of Houston, for appellee Horwitz-Texas Theatre Co.

GRAVES, Justice.

This appeal is from an order of the 80th District Court of Harris County, refusing appellant a temporary injunction against the appellees, Interstate Circuit, Inc., Horwitz-Texas Theatre Company, and Republic Pictures Corporation of Texas, enjoining them from thereafter—pending his suit for damages against them—showing or exhibiting the motion-picture styled "Man of Conquest".

Pursuant to antecedent rulings below as to service on certain other parties-defendant there, the appellant, before the receipt of any evidence on this hearing, voluntarily dismissed his action for such ad interim relief as against them, hence they are not before this court.

The trial court considered evidence from the appellant only (the appellees offering none) as a prelude to the entry of the challenged judgment, including an original print of the picture, "Man of Conquest", and, by agreement to that procedure from all parties, a viewing by the trial Judge of the picture itself, as reflected on the screen, inclusive of "the scenes shown, the words, and music thereto", which, in such entirety, was then introduced in evidence by the appellant, and made a part of this record without objection from the appellees.

The cause has been prosecuted to and advanced in this court, pursuant to R.S. Article 4662, and has been heard here in accordance with the requirements of that statute—that is, upon the transcript and statement of facts filed, including the petition for the writ and answers thereto, together with such affidavits and other evidence as the court below admitted.

This court also, by the courtesy of and agreement between the stated parties to this appeal, has, during its executive consideration thereof subsequent to submission, had the benefit of a private showing of the picture on the screen, in the same way as did the trial judge.

The main suit, to which the sought-for temporary injunction was ancillary, was one by appellant as the last surviving son of General Sam Houston, commander-in-chief of the armies of the Republic of Texas at the Battle of San Jacinto, and of his wife, Margaret Lea Houston, against the appellees and others for a million dollars damages, alleged to have resulted to him from their exhibiting the moving-picture termed "Man of Conquest", and therein holding out, as being a historical portrayal, numerous acts of theirs, as well as many incidents and happenings in the lives of his father and mother, who died in 1863 and 1867, respectively, that are all false in fact and tend to blacken their memories, hence are libelous under R.S. Article of Texas, 5430; his specifications being in his verbis as follows:

VI. The false portrayals upon which plaintiff's charge of libel is grounded are these:

"1. The estrangement between General Sam Houston and his first wife, Eliza Allen, is portrayed as due solely to that fact that she became so disgusted with his uncouth behavior at a public entertainment while governor of Tennessee and in the presence of his bride and other ladies, that she told him

never to touch her again, threw her wedding ring on the floor and told him to go wallow in the stable mire, which attitude was allegedly due to the alleged fact that he engaged in a public wrestling match while governor of Tennessee, rolling on the ground with his shirt tail out, gnawed on a joint of bear meat, and broke down his wife's door after she had left the entertainment in disgust. He is portrayed as telling his bride, at this time, that she had not married a gentleman, but that she had married a fighter and a politician.

"2. The picture represents a recruit in the War of 1812 referring to plaintiff's father as 'crazy Sam Houston', and shows a resultant fist-fight.

"3. When plaintiff's father resigned as Governor of Tennessee and went into self-imposed exile among the Cherokee Indians, he is portrayed on arrival in the Indian Country as loathsomely filthy and unkempt, and is shown, at the time, as slapping the face of the old Indian Chief who had been his friend and protector in boyhood.

"4. General Sam Houston is represented as a man of conquest who conspired to foment an unlawful uprising, and he is shown as refusing to marry plaintiff's mother, when she allegedly asked him to marry her, because of his consuming ambition in connection with the anticipated Texas Revolution.

"5. The picture portrays President Andrew Jackson as accusing plaintiff's father of treasonable intent toward the United States in connection with his first trip to Texas, calling him a power drunken adventurer and threatening to have him hanged; and represents General Sam Houston as saying to President Jackson, 'Let him be hanged who first betrays Liberty'.

"6. On General Sam Houston's first appearance in Texas, Stephen F. Austin is represented as telling him that his sort is not wanted in Texas, calling him a freebooting, self-seeking troublemaker, and ordering him to leave Texas over night; and Margaret Lea is represented as telling General Sam Houston he was not wanted in Texas.

"7. Margaret Lea is portrayed as courting General Sam Houston, publicly seeking an introduction at a presidential ball, asking him to dance with her, telling him she had wanted him to kiss her, and later asking him to marry her and it shows her weeping when he allegedly refused, all of which actions took place prior to his divorce from his first wife."

His original petition, on which this trial was held, further declared such moving-picture—in toto—to constitute libel against and to so blacken the fair name and memory of both his father and mother and to injure his own reputation and expose him to public ridicule, thereby causing him to suffer great personal humiliation and mental anguish; he averred that such picture had already been exhibited by the appellees in numerous theatres throughout Texas and other states, including the Majestic and Texan Theatres in the City of Houston, Texas, and that, unless restrained, would continue to be so shown, to his irreparable injury; he demanded also that a showing of the picture from the screen be made to the trial court, and prayed for both actual and exemplary damages in the aggregate stated, together with an injunction, stopping the appellees from exhibiting the picture further, either in Texas or elsewhere in the United States.

The appellees answered by demurrer and denial, both general, and specially pled, under oath, by detailed denials, that such picture not only did not in any conceivable sense libel or blacken the memory of either appellant's father or mother, or disparage them in anyway, but that on the contrary it in fact—to repeat their own colloquialism— "glorified" and exalted the memory of them both; that all of its scenes—particularly those challenged in the seven quoted specifications of appellant—represent a fair picturization of certain periods, acts, and episodes in the lives of General and Mrs. Houston; that, in final sum and substance, it portrays her "as a beautiful young woman, of fine character, great courage, and a love for freedom akin to that possessed by Sam Houston himself", and him as thus presaged in its "Prologue":

"This is the saga of Sam Houston—the story of a man's fight for freedom. It is dedicated to America's leaders in the present struggle to preserve our democracy. America has produced greater warrior-statesmen than Sam Houston, but only two —George Washington and Andrew Jackson. Houston gave the best years of his early manhood to the defense of a persecuted minority, the American Indian. And then when the death drums echoed across the Rio Grande, Houston heard the true challenge of his destiny and took the road to Texas. At San Jacinto he fought one

of the great decisive battles of the New World, and brought the victims of his enemies' tyranny into the warm, free fellowship of the American Union.

"No one man in history has added so much territory to our national heritage. Few·so much honor."

■ The sole question now presented for review is, whether or not it appears from this record that there has been an abuse of a sound judicial discretion upon the part of the court below, in so denying the coveted writ. Nagy v. Bennett, Tex.Civ. App., 24 S.W.2d 778, writ of error denied.

After careful consideration of the record, aided by briefs and oral arguments from both sides, it is concluded that no such abuse is made to appear, upon these, among other, considerations:

■ (1) Since the picture as an entirety —as well as in the seven particularized portrayals·set out supra—is declared to constitute such a libel, it is plain, under the well-settled law of libel, that it must be considered as a whole, from the beginning to the end, in order to determine whether it is libelous and consequently actionable; in other words, separate scenes and sentences may not be isolated from the balance and independently examined—apart from the whole—and thereby isolated as so offending, when, if they are taken with the whole, that effect could not properly be given to them. Yakavicke v. Valentukevicious, 84 Conn. 350, 80 A. 94, Ann.Cas.1912C, 1264; Times Pub. Co. v. Ray, Tex.Civ.App., 1 S.W.2d 471, affirmed by the Supreme Court in 12 S.W.2d 165; Southern Pub. Co. v. Foster, Tex.Com.App., 53 S.W.2d 1014; 27 Tex.Jur. page 610.

When so considered as a whole, this court cannot say the learned trial court was without warrant in finding the picture non-libelous.

■■ (2) Since the picture itself, as so shown on the movie-screen, was the best evidence of its own contents, as well as of the effect and impression it would normally make on the ordinary person, and since the learned trial court viewed the same upon appellant's demand, holding against his contention in that respect by denying the temporary injunction without specific findings, it will be presumed in support of the judgment that the court found on the facts the picture did not blacken the memory of either General or Mrs. Houston. Park Presbyterian Church v. Wm. Cameron & Co., Tex.Com.App., 58 S.W.2d 63; Citizens' Nat. Bank v. Elk Mfg. Co., Tex.Com.App., 29 S.W.2d 1062.

At all events, there is no clear showing that the evidence was insufficient to support a finding that no defamation was entailed, hence none that the court went beyond its proper province.

■ (3) This being a simple action to restrain the publication of an alleged libel tending only to blacken the memory of appellant's parents, without the allegation or proof of any facts showing, or tending to show, either[1] an injury to his own reputation, or[2] one to his business or other property-interests through an illegal coercion, intimidation, or conspiracy, no right to the prayed-for injunction was made out.

The mere general averments of appellant that the picture "tends to injure the reputation of plaintiff and to expose him to public ridicule and personal humiliation, and is libelous under Article 5430 of the Revised Civil Statutes of Texas", and "the defendant-corporations have conspired to libel General Sam ·Houston and his wife for

---

[1] Articles 5430 and 5433, R.S. of Texas; 37 Corpus Juris 11; Eagles v. Liberty Weekly, 137 Misc. 575, 244 N.Y.S. 430; Express Pub. Co. v. Wilkins, Tex.Civ. App., 218 S.W. 614; Express Pub. Co. v. Southwell, Tex.Civ.App., 295 S.W. 180; Fleagle v. Downing, 183 Iowa 1300, 168 N.W. 157; Harris v. Santa Fe Townsite Co., 58 Tex.Civ.App. 506, 125 S.W. 77; Light Pub. Co. v. Huntress, Tex. Civ.App., 199 S.W. 1168, 1169; State v. Haffer, 94 Wash. 136, 162 P. 45, L.R.A. 1917C, page 615, Ann.Cas.1917E, 229; McCormick v. Houston Printing Co., Tex. Civ.App., 174 S.W. 853; Nettles v. Somervell, 6 Tex.Civ.App., 627, 25 S.W. 658; Bradt v. New Nonpareil Co., 108 Iowa 449, 79 N.W. 122, 45 L.R.A. 681; Skrocki

v. Stahl, 14 Cal.App. 1, 110 P. 957; State v. Haffer, 94 Wash. 136, 162 P. 45, L.R. A.1917C, 610, Ann.Cas.1917E, 229.

[2] Bledsoe v. Wesley, Tex.Civ.App., 22 S.W.2d 718, writ of error dismissed; Ex parte George Tucker, 110 Tex. 335, 220 S.W. 75; Gibraltar Sav. & Bldg. Ass'n v. Isbell, Tex.Civ.App., 101 S.W.2d 1029; Robert E. Hicks Corp. v. National Salesmen's Ass'n, 7 Cir., 19 F.2d 963; Menard v. Houle, Mass., 11 N.E.2d 436; C. R. Miller Mfg. Co. v. Rogers, Tex.Civ.App., 281 S.W. 596; Mitchell v. Grand Lodge, 56 Tex.Civ.App. 306, 121 S.W. 178; Fritz Kuhn v. Warner Bros., U.S.Dist. Ct.Southern District Court, New York, 29 F.Supp. 800; Strang v. Biggers, Tex. Civ.App., 252 S.W. 826.

purposes of gain", which are all there is on this phase of the case, without specifying any facts thereunder or producing a scintilla of proof to establish how or to what extent either his own reputation or property-interests have been injuriously affected thereby, in no manner comply with the rules laid down by the cited authorities upon this feature. Upon that ground alone, the court was justified in refusing, if not required to refuse, the aid of equity.

Without further discussion, an affirmance will enter.

Affirmed.