RENFRO DRUG COMPANY V. A. R. LAWSON.

No. 7824. Decided March 11, 1942.
(160 S. W., 2d Series, 246.)

*Lindsay D. Hawkins,* of Breckenridge, and *Cofer & Cofer,* of Austin, for appellant.

In a suit for circulating a libel in order to sustain the venue plaintiff must allege a valid cause of action against the defendant. Blanton v. Garrett, 133 Texas 399, 129 S. W. (2d) 623; Light Pub. Co. v. Huntress, 199 S. W. 1168; Enterprise Pub. Co. v. Wheat, 290 S. W. 212.

Evidence that plaintiff's attorney purchased a copy of the libelous article does not show circulation. Patterson v. Frazier, 79 S. W. 1077; 36 C. J. 1224, 1230, 1246.

*Floyd Jones,* of Breckenridge, *Emauel Gassman,* of San Antonio, *J. A. Kibler* and *Claud Miller,* both of Waco, for appellee.

The circulation of a defamation tending to blacken the memory of the dead is a statutory tort which creates a cause of action in favor of the father for damages for mental distress and injury to his health, even though no injury was done thereby to his reputation. Cooley on Torts (4th Ed.) Vol. 1, page 5; Pollock on Torts, page 20; 62 C. J. "Torts," sec. 20.

*Harry I. Freedman, Franklin E. Spafford,* both of Dallas, and *McKay & Avery,* of Austin, filed briefs as amicus curiae.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The first of two questions certified by the Court of Civil Appeals for the Eleventh Judicial District is: "Did the Act of The Legislature of 1901, in defining civil libel so as to include the words 'tending to blacken the memory of the dead,' thereby create by implication a cause of action in favor of a father, not injured in his own reputation, to recover damages for a defamation of his deceased daughter?"

The manner in which the question arises and the relevant facts, disclosed by the certificate, the opinion of the Court of Civil Appeals and the transcript, are as follows: Appellee A. R. Lawson, a resident of Stephens County, filed suit in the district court of that county against appellant Renfro Drug Company, a corporation domiciled in Travis County, for damages on account of the alleged publication and circulation, through appellant's sale at its drugstore in Austin of a copy of a magazine containing an article defaming appellee's deceased daughter. Appellant filed a plea of privilege to be sued in Travis County, and appellee by his controverting plea sought to maintain venue in Stephens County under that part of subdivision 29 of Article 1995 which permits a suit for libel or slander to be brought in the county in which the plaintiff resides "at the time of the accrual of the cause of action." After hearing the evidence offered by appellee in support of the controverting plea, the trial court overruled appellant's plea of privilege. The Court of Civil Appeals reversed the trial court's order and transferred the cause to Travis County, holding that appellee failed to prove that he had a cause of action, because the act of 1901 (Article 5430, Revised Civil Statutes of 1925) did not create a cause of action in favor of a father, not injured in his own reputation, to recover damages for defamation of his deceased daughter, and because further there was no proof

that appellant circulated the magazine containing the defamatory article, the only evidence of circulation being the sale and delivery of a copy of the magazine solicited and induced by the plaintiff through his attorney. 144 S. W. (2d) 417. The questions were certified by the Court of Civil Appeals pending motion for rehearing.

The statement contained in the magazine, as alleged in appellee's petition, was a defamation "tending to blacken the memory of the dead" and was of such nature that it would have been as to the daughter, had she been living, libelous per se, but it did not reflect upon the good name, reputation or character of appellee, the father. While the petition contains allegations in general terms that by the publication and circulation of the statement appellee's good name, reputation and character were injured, the injuries particularly alleged and for which recovery of damages is sought are anxiety, mental anguish, distress of mind and consequent impairment of health. On the hearing no proof was made of injury to appellee's reputation or character. Appellee states in his brief that his suit "is not for injury to his reputation, but is based on the defamation defined as 'tending to blacken the memory of the dead' and for mental distress and injury to his health, which were necessarily and proximately caused by the circulation of the defamation in question."

■ The effect of the filing of the plea of privilege and the controverting plea was to impose on appellee, plaintiff in the trial court, the burden of proving on the hearing of the plea of privilege that a cause of action for libel in fact accrued in his favor. A. H. Belo Corp. v. Blanton, 133 Texas 391, 129 S. W. (2d) 619. If he failed to prove that he had a cause of action, the plea of privilege should have been sustained. Victoria Bank & Trust Co. v. Monteith, 138 Texas 216, 158 S. W. (2d) 63.

Prior to 1901 there was in Texas no statutory definition of civil libel, and actions for recovery of damages for libel were governed by the common law. The twenty-seventh Legislature in 1901 enacted a chapter on civil libel, the first section of which defined libel as follows:

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawing, tending to blacken the memory of the dead, or tending to injure the reputation of

one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of any one, or to publish the natural defects of any one, and thereby expose such person to public hatred, ridicule or financial injury."

■ This definition was brought forward in the subsequent revision of the civil statutes. Article 5595, Revised Statutes of 1911, Article 5430, Revised Statutes of 1925. The other sections of the Act of 1901, which relate to evidence that may be given in defense of libel suits, to privileged publications and the preservation of existing defenses, are not relevant to the questions presented for decision. Those sections as amended are Articles 5431 to 5433 of the Revised Civil Statutes of 1925.

Section 1 of the Act of 1901 (Article 5430, R. S. 1925) does not purport to create a cause of action where none theretofore existed. It merely sets out a definition of libel. And if a new cause of action exists by reason of the statute, it must arise by implication from the definition. In construing the statute, for the purpose of determining whether it intends to create a cause of action in favor of a father to recover damages for mental anguish suffered by him on account of defamation of his deceased daughter, it is necessary to consider certain of the general rules announced by the authorities applicable to actions for libel at common law or in the absence of statute.

First, as to the definition itself, we are convinced that it is substantially a restatement of the common law definition of libel. Kent's definition is: "A libel, as applicable to individuals, has been well defined to be a malicious publication, expressed either in printing or writing, or by signs or pictures, tending either to injure the memory of one dead, or the reputation of one alive, and expose him to public hatred, contempt and ridicule." Kent's Commentaries, (13th Ed.) Vol. 2, pp. 22-23. His definition is that contained in the opinion of Chief Justice Parsons in Commonwealth v. Clapp, 4 Mass. 163, 3 Am. Dec. 212, which has been approved in later decisions and referred to as "the most clear and precise definition of libel." Clark v. Binney, 2 Pick. (Mass.) 113; Lyman v. New England Newspaper Publishing Co. 286 Mass. 258, 190 N. E. 542, 92 A. L. R. 1124. It is interesting to observe that Chief Justice Parsons was defining libel in a criminal case, but his definition has been many times approved and used in later decisions as applicable

to civil libel. Kent treats the definition as appropriate alike to civil and to criminal libel.

The Connecticutt court, in an early civil suit for libel (Hillhouse v. Dunning, 6 Conn. 391) defined libel in language substantially the same as that of the definition above quoted from Kent, and containing the phrase "tending to blacken the memory of the dead." Later the same court, speaking through the same justice, used the same definition of libel in a case of criminal libel. State v. Avery, 7 Conn. 266, 18 Am. Dec. 105.

American Jurisprudence gives Kent's definition as one "which has received general acceptance and approbation." Vol. 33, p. 38, Sec. 3. The text applies the definition both to civil and to criminal libel. For other similar definitions see: 36 C. J. p. 1143, Sec. 3; 18 Am. Encyc. of Law (2d Ed.) 861; Newell's, The Law of Slander and Libel (4th Ed.) pp. 1-2, Sec. 2; State v. Haffer, 94 Wash. 136, 162 Pac. 45 L. R. A. 1917c, p. 610, and note pp. 615-617, Am. Cas. 1917E, 229; White v. Bourquin, 204 Ill. App. 83.

All of the authorities bearing directly upon the first question certified, except decisions from Quebec, hold in substance that "the law does not contemplate the offense (defamation of the dead) as causing any special damage to another individual, though related to the deceased, and therefore it cannot be made the basis for recovery in a civil action." Newell's, The Law of Slander and Libel (4th Ed.) p. 368, sec. 332. See also Wellman v. Sun Printing & Pub. Ass'n, 66 Hun 331, 21 N. Y. S. 577, 579; Sorenson v. Balaban, 11 App. Div. 164, 42 N. Y. S. 654; In re: Fleming, 223 App. Div. 849, 228 N. Y. S. 544; Eagles v. Liberty Weekly, Inc., 244 N. Y. S. 430; Rose v. Daily Mirror, Inc., 284 N. Y. 335, 31 N. E. (2d) 182; Bradt v. New Nonpariel Co., 108 Iowa 449, 79 N. W. 112, 45 L. R. A. 681; Fleagle v. Downing, 183 Iowa 1300, 168 N. W. 157; Skrocki v. Stahl, 14 Cal. App. 1, 110 Pac. 957; Saucer v. Giroux, 54 Cal. App. 732, 202 Pac. 887; Note L. R. A. 1917C, pp. 615-617; Note 90 A. L. R. pp. 1175, 1181; Odgers on Libel and Slander (5th Ed.) p. 23; Gatley on Libel and Slander (3d Ed.) p. 11; C. J. p. 11, Sec. 295; 33 Am. Jur. pp. 42-43, Sec. 7; Restatement of the Law of Torts, Vol. 3, p. 143, Sec. 560.

In American Jurisprudence (Vol. 33, p. 42, Sec. 7) the text announcing the rule that defamation of the dead cannot be made the basis of recovery in a civil action is followed by

this statement: "And this is the rule notwithstanding the fact that certain well known definitions of libel include, as one form thereof, publications tending to blacken the memory of the dead." In our opinion, an intention on the part of the legislature to create a cause of action in favor of one not injured in his own reputation is not reasonably implied from the enactment of a definition containing the phrase "tending to blacken the memory of the dead," when all of the decisions that had passed on the question had denied the existence of such cause of action, although the same phrase was included in the common law, and generally approved, definition of libel.

The opinion of the Court of Civil Appeals, directing attention to the fact that "the statutory definition of libel is not in itself sufficiently comprehensive to include all the essential elements of a cause of action for libel consisting alone of a 'defamation * * * tending to blacken the memory of the dead'," correctly draws the conclusion that the common law must be looked to to supply the essential elements, one of which is injury to the reputation of the plaintiff. A civil action for the recovery of damages for libel lies because the law makes reputation, as a part of the right of personal security, one of the objects of its protection. Kent's Commentaries (13th Ed.) Vol. 4, p. 20. It has been said that the gist of an action for libel is injury to the plaintiff's reputation. Cohen v. New York Times, 138 N. Y. S. 206. In civil suits for libel recovery is given "in pecuniary satisfaction for the loss of character and reputation." A. H. Belo & Co. v. Fuller, 84 Texas 450, 453, 19 S. W. 616, 31 L. R. A. 75. Other authorities hold that injuries affecting the reputation are the subject of the action for libel and that the general damages recoverable in civil suits for libel are in compensation for injury to the plaintiff's reputation. Terwillinger v. Wands, 17 N. Y. 54, 72 Am. Dec. 420; Lyman v. New England Newspaper Pub. Co. 286 Mass. 258, 190 N. E. 542, 92 A. L. R. 1124; Odgers on Libel and Slander (5th Ed.) pp. 17, 369; Gatley on Libel and Slander (3d Ed.) pp. 14-15, 92-93, 620; 37 C. J. p. 117, Sec. 566; Restatement of the Law of Torts, Vol. 3, pp. 313-314, Sec. 621. We think, therefore, that if the act of 1901 (Article 5430, R. S. 1925) gives by implication the right to sue for damages for defamation of the dead, the right is given to one whose reputation has suffered injury from the defamation.

Another general rule leads to the same conclusion. It is that mental anguish without other actual injury will not support

the recovery of substantial damages. Lynch v. Knight, 9 H. L. Cas. 577, 8 Eng. Rul. Cas. 388; Gulf C. & S. F. Ry. Co. v. Trott, 86 Texas 412, 25 S. W. 419, 40 Am. St. Rep. 866; Western Union Telegraph Co. v. Cooper, 71 Texas 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772; Trawick v. The Martin Brown Co., 79 Texas 460, 14 S. W. 564; Southwestern Bell Tel. Co. v. Cook, 30 S. W. (2d) 497 (application for writ of error refused) ; Michels v. Boruta, 122 S. W. (2d) 216, 221. There are certain recognized exceptions to the rule, but they have no application to the question under consideration.

The right to recover for mental anguish, when it exists, is "restricted to the person who has directly sustained the injury." Gulf, C. & S. F. Ry. Co. v. Overton, 101 Texas 583, 110 S. W. 736, 19 L. R. A. N. S. 500; Western Union Tel. Co. v. Cooper, 71 Texas 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772. For this reason and because a cause of action for libel accrues ordinarily to the person against whom the defamatory charge has been made, it is held that a parent has no cause of action for the defamation of his living child's character. Black v. Carrollton R. R. Co., 10 La. Ann. 33, 63 Am. Dec. 586; Pattison v. Gulf Bag Co., Ltd. 116 La. 963, 41 So. 224, 114 Am. St. Rep. 570; Murray v. Gast Lithographing & Engraving Co., 31 Abb. N. C. 266, 28 N. Y. S. 271. As said in Bradt v. New Nonpariel Co., 108 Iowa 449, 79 N. W. 122, 45 L. R. A. 681, the suffering of the parent is in kind the same, whether the child defamed be living or dead.

Prior to 1901 there could be no recovery of damages for mental anguish, when the libel was not actionable per se, without proof of some other injury or damage. Hirshfield v. Fort Worth National Bank, 83 Texas 452, 18 S. W. 743, 15 L. R. A. 635, 29 Am. St. Rep. 660. But it was held that if the publication was libelous per se the law would assume that the plaintiff, the person defamed, was injured in his reputation, and would permit the consideration of plaintiff's injured feelings, in connection with the injury to his reputation, as a proper item of damages. Belo & Co. v. Fuller, 84 Texas 450, 19 S. W. 616, 31 Am. St. Rep. 75.

In Guisti v. Galveston Tribune, 105 Texas 497, 152 S. W. 167, the court construed Section 1 of the Act of 1901 (then Article 5595, R. S. 1911) as abolishing in effect the common law distinction between libel actionable per se and libel not actionable per se, holding that since the enactment of the

statute it is not necessary to the right to maintain an action to allege or prove special damages, whether the publication is libelous per se or is not libelous per se, and that even when the libel is not actionable per se damages for mental anguish are recoverable without making proof of other injury or damage. We do not understand this decision to mean, however, that damages for mental anguish may be recovered without injury to the reputation or that the law will assume injury to the reputation of one other than the person libeled. It means rather that, if the publication is a defamation as defined in the statute, injury to the reputation of the person defamed is presumed, and that, with injury presumed, the mental anguish of the person defamed may be taken into consideration in awarding damages. Certainly the law would not assume injury to the reputation of a person to whom the publication does not relate and upon whose reputation or character it in no way reflects.

We believe that if the Legislature had intended to depart so far from well established rules as to create a cause of action for the recovery of damages for mental anguish in the absence of injury to the plaintiff's reputation or other injury to him, its intention would have been clearly expressed and not left to implication from the enactment of a definition.

It is our opinion further that a statute intended to authorize the recovery of damages for mental suffering caused by defamation of the dead would designate the persons to whom the right to sue is given. The deceased daughter might leave surviving her a husband, children, a father, a mother, brothers and sisters. Did the Legislature intend that all of these should have causes of action by reason of defamation of the dead? Would the question whether mental anguish of the plaintiff in the particular case is sufficiently severe or real to support an action for damages be determined by the court or by the jury? When the Legislature enacted a law authorizing actions for recovery of damages for injuries causing death, it was careful to specify those for whose benefit actions might be instituted and to provide for the apportionment of damages among them. Revised Civil Statutes of 1925, Articles 4671- 4678.

The second question certified is as follows: "Is evidence alone of the sale of a magazine containing a defamatory article to an attorney at his solicitation, after he was employed to bring a suit to recover damages for the defamation, legal and

sufficient to show, or raise an issue of the fact, that the libelous article was circulated by the defendant?" The certificate states that the only evidence of circulation of the alleged libel was the sale and delivery by the defendant of a magazine containing the libelous article to plaintiff's attorney after he was employed to bring the action.

"Each time a libelous article is brought to the attention of a third person, a new publication has occurred, and each publication is a separate tort. Thus, each time a libelous book or paper or magazine is sold, a new publication has taken place." Restatement of the Law of Torts, Vol. 3, p. 200, sec. 578. See also Newell's, The Law of Slander and Libel, (4th Ed.) pp. 236-237, Sec. 192; Odgers on Libel and Slander (5th Ed.) p. 166. But "it is generally held that the publication, of a libel or slander, invited or procured by the plaintiff, or by a person acting for him in the matter, is not sufficient to support an action for defamation." 33 Am. Jur. p. 105, Sec. 93. See also Patterson and Wallace v. Frazer, 79 S. W. 1077; Rosenbaum v. Roche, 46 Texas Civ. App. 237, 101 S. W. 1164; Bull v. Collins, 54 S. W. (2d) 870; Rivers v. Feazell, 58 S. W. (2d) 133; Taylor v. McDaniels, 139 Okla. 662, 281 Pac. 967, 66 A. L. R. 1246.

■ There was no publication or circulation sufficient to support an action, because the sale was made to plaintiff's attorney at his solicitation after he had been employed to bring the action.

Appellee insists that proof was made by his attorney's testimony of circumstances from which other sales of copies of the magazine or communication of its contents to others might be inferred. It has many times been held that in answering certified questions the court will consider only the facts certified and will not look to the statement of facts. Goldstein v. Union Nat'l Bank, 109 Texas 555, 561, 213 S. W. 584; Employers' Liability Assur. Corp. v. Young County Lbr. Co., 122 Texas 647, 657, 64 S. W. (2d) 339. Scott v. Gardner, 137 Texas 628, 156 S. W. (2d) 513. We have, however, examined the brief testimony of appellee's attorney set out in the statement of facts which accompanies the record. The substance of his testimony is that after his employment by appellee in this suit he purchased a copy of the magazine containing the defamatory article at appellant's drugstore in Austin; that there

was a newsstand in the front part of the store on which he saw the magazine that he purchased with two or three other copies; and that he paid for the magazine at the cash register. This testimony alone does not, in our opinion, tend to prove that other copies of the magazine were in fact sold or that the contents of any copy of the magazine were brought to the attention of any other person by appellant.

Both of the certified questions are answered "No."

Opinion adopted by the Supreme Court March 11, 1942.