## WILKS v. DE BOLT.

### No. 6342.

Court of Civil Appeals of Texas. Texarkana.

March 18, 1948.

Rehearing Denied March 25, 1948.

Smith & Smith, of Tyler, for appellant.

Pollard, Lawrence, Blackburn, Reeves & Jarrel, of Tyler, for appellee.

HALL, Chief Justice.

Appellee, Mrs. L. H. DeBolt, instituted this suit against appellant, Ernest Wilks, for damages caused by an alleged slanderous statement made by Ernest Wilks while he was fire marshal of the city of Tyler, Texas, concerning the fire which occurred on August 13, 1937, which partially destroyed a two-story dwelling house in Tyler owned and occupied by Mrs. DeBolt as a home and rooming house. Mrs. DeBolt alleged that a certain slanderous statement was made to one T. M. Hall in response to an inquiry of the said Hall as to when Mr. Wilks expected an adjustment of the loss to be made and as to why the adjustment would be delayed.

The cause was tried to a jury upon special issues and upon the answers to said issues the trial court rendered judgment for Mrs. DeBolt in the sum of $1,000.00.

Appellant by his point No. 2 asserts that the trial court erred in holding that the alleged slanderous statement was not privileged. This point presents the controlling question here.

The facts show that Ernest Wilks, appellant, was fire marshal of the city of Tyler in August, 1937, and that Mrs. DeBolt was the owner of a dwelling house in Tyler occupied by her as a home and rooming house, which was partially destroyed by fire on August 13, 1937. The evidence also

shows that the house caught fire about 1 o'clock, A. M., on said date, originating on the inside of the house between two inner walls. Mrs. DeBolt's home was located next door to the fire department, only one vacant lot between them. Within two minutes after the fire alarm was sounded the fire department personnel was on her property fighting the fire, and a very short time after the alarm was sounded the appellant, Wilks, was also at the scene of the fire, and in line with his duties as fire marshal made an investigation of the cause of the fire. The facts show further that Mrs. DeBolt carried insurance on the property with a local insurance agency. T. M. Hall, the person to whom the alleged slanderous statement was made, is a building contractor and also makes estimates of fire losses. On the morning after the fire he came to the DeBolt home for the purpose of checking over the damage done by the fire. He made his investigation and prepared his estimate in longhand and went to the office of the insurance carrier where a Mr. Floyd, an employee in the office of the insurance agency, made typewritten copies of Hall's estimate of Mrs. DeBolt's loss. Hall left one of these copies with the insurance agency and went immediately to Mrs. DeBolt's home and left another copy with her. In leaving Mrs. DeBolt's home he met appellant, Wilks, and the following conversation occurred:

"A. Well I (Hall) asked him (Wilks) when he was looking for the adjusters.

"Q. What did he say to you? A. He said the adjusters wasn't coming.

"Q. Did you ask him anything about why they were not coming? A. Yes.

"Q. Did he reply? A. He said—yes—

"Q. What did he say? A. He said that it was an inside job, the house, Mrs. DeBolt set the house afire, or had it done, and there wouldn't be any adjustment; if it was an adjustment it would be at least ninety days, and she was not entitled to but only three hundred dollars, if she got anything, because that is all she had been offered for the old house."

After the above conversation Hall went back to the insurance agency and discussed the matter of Mrs. DeBolt's fire loss with Mr. Floyd of the insurance agency. The above facts show Hall's connection with the adjustment of Mrs. DeBolt's fire loss. He said he was acting as Mrs. DeBolt's friend in the matter to see that she got a fair settlement and that her rights were taken care of, because their friendship was of long standing.

The testimony shows conclusively that Hall was acting for Mrs. DeBolt in making the estimate of her loss. He interested himself in the matter shortly after the fire and had made the estimate and delivered copies to the insurance agency, and to Mrs. DeBolt, all within less than twenty-four hours after the fire.

The question presented here is whether Hall's connection with Mrs. DeBolt in the matter of adjusting her fire loss is such as to render any alleged slanderous statement made to him privileged. We have concluded that it is and that under settled rules of law the alleged statement of Wilks would not be actionable. In Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 251, 146 A.L.R. 732, by the Commission of Appeals, the following quotation from 33 Am.Jur., page 105, Sec. 93, is quoted with approval:

"It is generally held that the publication, of a libel or slander, invited or procured by the plaintiff, *or by a person acting for him in the matter,* is not sufficient to support an action for defamation." (Italics ours.)

In Missouri Pacific Ry. Co. v. Richmond, 73 Tex. 568, 11 S.W. 555, 557, 4 L.R.A. 280, 15 Am.St.Rep. 794, Chief Justice Stayton cites with approval the following pertinent statement from Harrison v. Bush, 5 El. & Bl. 348, which we think is applicable here:

" 'A communication made bona fide upon any subject-matter upon which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contained criminatory matter, which, without this privilege, would be slanderous and actionable. * * * "Duty," in the proposed canon, cannot be confined to legal duties which may be enforced by indictment, ac-

tion, or mandamus, but must include moral and social duties, of imperfect obligation.' 'Where words imputing misconduct to another are spoken by one having a duty to perform, and the words are spoken in good faith, and in the belief that it comes within the discharge of that duty, or where they are spoken in good faith, to those who have an interest in the communication, and a right to know and act upon the facts stated, no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such cases without proof of express malice.' "

See also Dickinson v. Hathaway, 122 La. 644, 48 So. 136, 21 L.R.A.,N.S., 33; Kansas City M. & B. R. R. Co. v. Delaney, 102 Tenn. 289, 52 S.W. 151, 45 L.R.A. 600; Taylor v. McDaniels, 139 Okl. 262, 281 P. 967, 66 A.L.R. 1246; Laughlin v. Schnitzer, Tex.Civ.App., 106 S.W. 908.

Hall knew that Wilks was fire marshal of the city of Tyler, that it was his duty to investigate the origin of fires, and that he had investigated the fire in Mrs. DeBolt's home. Also Wilks knew that Hall had made an estimate of the damage done to Mrs. DeBolt's home by the fire, and that he had delivered a copy of said estimate to Mrs. DeBolt. There is no testimony to show that Wilks acted maliciously in respect to the alleged slanderous statement or that he did so without good cause, which arose from his recent investigation of the fire. As a matter of fact the jury found that Wilks acted without malice and with good cause.

It is our opinion after a careful study of this record that the facts do not present an issue of actionable slander or defamation of character by appellant Wilks. Appellant at the conclusion of the evidence was entitled to an instructed verdict for the reason that Hall was acting as the agent of Mrs. DeBolt, although his action in her behalf may have been gratuitous on account of their long friendship.

The above conclusion renders unnecessary a discussion of the other points advanced by appellant.

The judgment of the trial court is reversed and judgment here rendered for appellant.