BORDEN, INC., et al., Appellants,

v.

Robert A. WALLACE, Appellee.

No. 6726.

Court of Civil Appeals of Texas, El Paso.

Aug. 2, 1978.

Rehearing Denied Sept. 6, 1978.

Baker & Botts, Hugh Rice Kelly, Thomas R. Phillips, Houston, Clark, Thornton & Summers, Robert B. Thornton, San Antonio, for appellants.

Daniel R. Rutherford, San Antonio, W. Page Keeton, Austin, for appellee.

## OPINION

PRESLAR, Chief Justice.

This is a suit for slander whereby Appellee recovered $500,000.00 in actual damages and $500,000.00 in exemplary damages by a jury verdict. We reverse and render.

Appellee was a wholesale route salesman for Appellant, Borden, Inc., making sales and deliveries to schools and retailers on a commission basis. On May 10, 1974, an employee of Wuest, a retail store customer

of Borden, reported to his superiors that he saw Appellee stealing dairy products. Wuest's Vice President, Robert Wuest, transmitted this information to James Wolf, Borden's sales manager, and requested that Appellee not make any more deliveries to any of Wuest's 15 stores. Borden has a company rule that dismissal is automatic for (1) drinking on the job, and (2) dishonesty, and it is company policy to give polygraph tests to employees prior to their employment and when they are suspected of dishonesty. At Wolf's request, the Defendant Andrews, Borden's personnel director, arranged for Appellee to take a polygraph test and, following such test, Appellee was discharged. This suit was then filed against Defendants Robert Wuest and Wuest, Inc., Borden, Inc., and its employee J. C. Andrews. At the conclusion of the evidence, a directed verdict was granted in favor of Wuest, Inc. and Robert Wuest on the basis that there was no showing of malice. The jury verdict was against J. C. Andrews and Borden, Inc., jointly and severally.

The judgment is based on findings of two defamatory statements. The jury found that the Defendant Borden, through its agent, Defendant Andrews, communicated two slanderous remarks; one to Wayne Knight, a Borden employee, to the effect that Appellee had been fired because of dishonest acts amounting to theft, and the other was to Ron Morrell, a polygraph operator, that Appellee Wallace was suspected of committing dishonest acts amounting to theft at the Wuest Oak Park Store.

We have concluded that Andrews' communications to both Knight and Morrell were conditionally privileged, and that there is no evidence that such statements were made with malice. The jury answers to Special Issues Nos. 5 and 10 found that both statements were made with malice. In submitting the issues on malice, the trial Court instructed the jury as follows:

"You are instructed that malice means ill-will and bad or evil motive or such gross indifference to the rights of another as amounts to a wilful or wanton act and done intentionally and without just cause or excuse."

Appellants urge that this instruction is essentially that of common law malice, and that is no longer the conduct necessary in Texas to overcome a qualified privilege under the ruling of *Dunn and Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896 (Tex.1970). We do not reach that question as we are of the opinion that there is no evidence to support the jury's findings under the instruction as given. Proof of malice is necessary for Appellee's recovery if the statements of Andrews were made under a qualified or conditional privilege. As the Supreme Court said in *Dunn and Bradstreet, Inc. v. O'Neil*, supra:

"* * * 'Such privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose. The effect of the privilege is to justify the communication when it is made without actual malice.' *Buck v. Savage*, 323 S.W.2d 363 (Tex.Civ.App.1959) writ ref'd, N.R.E. * * *"

We will not dwell at length on the question of privilege because counsel for Appellee in oral argument stated that he is not really contending that there is no conditional privilege in this case. We do note that the Court submitted the question of privilege to the jury, and we are of the opinion that whether a communication is privileged is a question of law for the Court. *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942); *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 228 S.W.2d 499 (1950). We conclude that the Defendant's conditional privilege was shown to exist as to each of the two communications.

We sustain Appellants' Points of Error Nos. 7 and 10 that there was no evidence that Andrews' statement to Knight was made with malice, and that there was no evidence that Andrews' statement to Morrell was made with malice.

In deciding "no evidence" points such as these, an appellate Court must consider only the evidence and the inferences tending to support the findings and disre-

gard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). As to the existence of malice where there is a conditional or qualified privilege, Judge Peden, in *Houston Belt & Terminal Railway Company v. Wherry,* 548 S.W.2d 743 at 754 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n. r. e.), quotes at length from Texas Jurisprudence as follows:

"'Although the existence of actual or express malice is not presumed as a matter of law and must be proved, it need not be proved by direct or extrinsic evidence; its existence is sufficiently shown by evidence of facts and circumstances from which it is reasonably inferable. It may be inferred from the relation of the parties, the circumstances attending the publication, the language used, and from the words or acts of the defendants before, at, or after the time of the communication; but there must be evidence from which the jury can infer malice existing at the time of publication and actuating it. Malice is not implied or presumed from the mere fact of the publication, nor may it be inferred alone from the character or vehemence of the language used, nor found from the falsity of the statement alone.' 36 Tex.Jur.2d 475, Libel and Slander Sec. 149."

Was Andrews actuated by malice or evil motive to tell Knight that Appellee Wallace had been fired from Borden, and that his firing was because he had committed dishonest acts amounting to theft at the. Wuest Oak Park Store? The circumstances of the statement being made are these. Knight, who was a very close friend and "buddy" of Wallace, went to see Andrews, the personnel director of Borden, and inquired as to Wallace's discharge. Thus, the statement of Andrews was not volunteered but was given after inquiry by a fellow employee who testified that he did so because of his concern for what had happened to his friend Wallace, and to be sure that he was treated fairly. He testified that Andrews was his friend, and that he, Andrews, "looked after and took pretty good care of the drivers." Wallace also testified to being a good friend of Andrews, that he had known him since elementary school days, and that he talked to him nearly everyday. Appellee urges some sort of conspiracy to get Wallace fired to satisfy the customer, Wuest. The circumstances were that that was not necessary as there is no contention but that Wallace worked at the pleasure of Borden and could be dismissed at any time. This is not a suit for wrongful discharge. In fact, any damages for loss of employment were excluded under the Court's charge. This is a suit for slander. The question is whether there was any malice to cause Andrews to make the statement to Knight. What evil motive was there in answering this friend's question about another friend? We have searched the record and found no evidence of malice.

■ Was Andrews actuated by malice in telling the polygraph operator, Morrell, that Wallace was suspected of committing dishonest acts amounting to theft at the Wuest Store? As indicated, Borden had a policy of using polygraph tests in their preemployment interviews and in determining questions of honesty when they arose. When offered the polygraph test, Wallace consented and went with Andrews to the office of the polygraph operator, Morrell. In consenting to this test, he must have known that the test could not be conducted without the operator being told what the charges or circumstances were. Thus, he consented to Morrell's being told by Andrews that he, Wallace, was suspected of committing dishonest acts at the Wuest Store. We see no malice in the telling and no evil motive in complying with the consent or wish of Wallace. In addition to the fact of no evidence, it is held that one may not recover the damage caused by a publication invited by him. *Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770 (1945); *Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246 (1942); 36 Tex.Jur.2d Libel and Slander, Sec. 34, p. 321 (1962); 53 C.J.S. Libel and Slander § 95, p. 151 (1948); *Duncantell v. Universal Life Insurance Company,* 446 S.W.2d 934 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.).

■ There is yet another reason why Appellee cannot recover as to the statement to Morrell. Liability in that regard is predicated on Special Issue No. 6, which reads:

"Did J. C. Andrews on or about May 14, 1974, tell Ron Morrell that Plaintiff Robert Wallace was suspected of committing dishonest acts amounting to theft at the Wuest Oak Park Store?"

The jury answered "yes." This was followed by Special Issue No. 7:

"Were the statements inquired about in Issue No. 6 true?"

The jury answer was "No." It was incumbent upon the Appellee to get a proper finding that Andrews told Morrell that Wallace was suspected of committing dishonest acts amounting to theft, and, further, to get a proper finding that such statement was false. A "no" answer to the inquiry of whether or not the statement inquired about was true is not a converse finding that the statement was false. *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966). The "no" answer is only a finding that the Defendant failed to carry the burden of proof on the issue as to whether or not the statement was true, when the issue actually should have placed the burden upon the Plaintiff to prove that the statement was false. But the semantics of the issue become unimportant, for we conclude that as a matter of law the facts inquired about in Special Issue No. 6 were true.

Since the Courts of Civil Appeals are final in slander cases, Tex.Rev.Civ.Stat. Ann. art. 1821, there is no need to consider the other points of error.

For the reasons discussed, the judgment of the trial Court is reversed and judgment is here rendered that Appellee take nothing.

## OPINION ON MOTION

### PER CURIAM.

Appellee in this cause, joined by his attorney W. Page Keeton, has filed a motion asking this Court to determine the qualifications of W. Page Keeton to be lead counsel. Appellant has filed an answer attaching thereto Opinion No. 259 of the State Bar of Texas Professional Ethics Committee, and Appellants have joined in the motion asking this Court to make a determination as to counsel's qualifications.

The question involved is a possible conflict of interest of W. Page Keeton to now represent Appellee when he had previously had brief employment in the case by Appellants. Shortly after the return of the verdict for $1,000,000.00 in this cause, Attorney Robert B. Thornton contacted W. Page Keeton concerning his willingness to be engaged in an appeal on behalf of the Appellants, Borden, Inc., and J. C. Andrews. A conversation ensued in which Attorneys Thornton and Keeton discussed the merits of an appeal of the cause for approximately one hour. In that conversation, the charge of the Court given to the jury was discussed, as well as some of the evidence presented to the jury, and Keeton suggested certain things for the motion for new trial, after which time some of the documents, all of which would be part of the record, were left with W. Page Keeton for his examination and ultimate use in connection with preparing an appeal. However, Keeton did nothing more on the case and shortly thereafter, within about a week, Attorney Thornton contacted Keeton and informed him that he, Thornton, had been terminated from the appeal of the case and that the appeal would now be handled by the law firm of Baker & Botts of Houston. Keeton was instructed to return all file documents which had been left in his possession, and to prepare a statement for services rendered. The file materials were returned and there was submitted a small fee statement which was paid. Appellee and Keeton bring the matter to this Court saying that the Attorneys for the Appellants have indicated that they feel that a conflict of interest exists and have indicated a desire for him to terminate his employment in representation of the Appellee, Robert Wallace. Keeton desires to continue the employment and in support of his position, cites the fact that no confidences were disclosed to him, and therefore none

can be divulged by him in accordance with Disciplinary Rule 4–101, and further that no employment relationship exists as contemplated by Disciplinary Rule 5–105. He asserts that he is in no way disqualified in representing the Appellee and by this, his own motion, requests this Court to make a determination as to whether or not any basis for criticism exists in connection with his representation of the Appellee.

We view the question as being one purely of ethics and not for Court determination. The ethics of the matter and the qualifications to practice before this Court are two different things and are resolved by different tribunals. Under the provisions of the State Bar Act, Tex.Rev. Civ.Stat.Ann. art. 320a–1, the Supreme Court has promulgated rules governing the State Bar, including a Code of Professional Responsibility to govern the professional conduct of the members of the State Bar. Questions arising thereunder are determined by a committee of the State Bar. For instance, it has been held that authority to institute disciplinary procedures is vested specifically in the Grievance Committee of the District in which the Attorney resides. *Arnett v. State*, 304 S.W.2d 386 (Tex.Civ. App.—Eastland 1957, writ ref'd n. r. e.). The qualifications of persons who are authorized to practice are prescribed by Statute, and only a person licensed to practice law may appear in Court on behalf of another. It is the obligation of the Court to see that one so appearing is duly qualified and licensed.

The ethics of this matter are not before us and we express no opinion thereon. The qualifications of the movant are not in issue. That is the only issue we could rule on and it is not before us. The motion is denied.