DATACON, INC.

v.

**DUN & BRADSTREET.**

No. CA 3-77-1311-F.

United States District Court, N. D. Texas, Dallas Division.

Feb. 22, 1979.

---

Weldon Parkhill, Henry B. Parkhill, Parkhill & Parkhill, Grand Prairie, Tex., for plaintiff.

Larry M. Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for defendant.

## ORDER

ROBERT W. PORTER, District Judge.

Datacon, Inc. has sued Dun & Bradstreet, Inc. seeking actual and exemplary damages arising out of the publication and circulation of an allegedly "untrue and libelous" credit report. Dun & Bradstreet is a mercantile agency which provides credit information to its subscribers under subscription agreement. The contracts between Dun & Bradstreet and its subscribers provide for a continuing service pursuant to which for a period of twelve months after a subscriber initially requests credit information about a particular commercial enterprise, firm or corporation, Dun & Bradstreet furnishes that subscriber all additional updated information regarding that proprietorship, firm or corporation. The reports state that the information contained therein is furnished in strictest confidence.

Datacon, Inc. is a Texas corporation whose primary business is the manufacturing of self-service gasoline equipment. On August 3, 1977, defendant Dun & Bradstreet compiled, published, and circulated the following "report": "On August 3, 1977, outside sources revealed that Datacon, Inc. had discontinued business." The summary judgment evidence before the Court indicates that this "report" was the result of an investigation done by a T. M. Peninger who, on or about August 2, 1977, dialed Datacon, Inc.'s telephone number in Arlington, Texas, only to find out from the woman answering the phone (who was an employee of Arlington Instrument Products, Inc.) that Datacon had been a subsidiary of her company but was no longer located in Arlington. On the basis of that information, Peninger prepared the August 3rd, 1977 report.

The parties agree that the report was incorrect. It was sent to three subscribers of Dun & Bradstreet's reports. On or about August 18, 1977, Peninger received a telephone call from Mr. Darrell Brake, president of Datacon complaining of the August 3rd, 1977 report. Pending a full report and on the basis of information given him by Brake, another report dated August 27, 1977 was prepared which stated: "Any report to the effect that Datacon Corp. has discontinued operations is erroneous and should be disregarded." This correction notice was sent to the same subscribers of Dun & Bradstreet to whom the August 3rd, 1977 was sent.

Defendant argues that the report was a confidential communication made by a mercantile credit reporting agency in good faith

to requesting subscribers and is therefore privileged as a matter of law. *Dun & Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896 (Tex. 1970). In *O'Neil,* the Texas Supreme Court held that reports of mercantile or other credit reporting agencies, furnished in good faith to one having a legitimate interest in the information, are privileged unless it is sent indiscriminately to subscribers generally, or to those not inquiring or interested in knowing, the condition or financial status standing of the person reported upon. The Supreme Court also held that the privilege is conditional because the effect of the privilege is to justify the communication when it is made without actual malice.

Dun & Bradstreet, Inc. is a mercantile credit reporting agency, and is therefore entitled to assert the conditional privilege. *Dun & Bradstreet v. O'Neil,* 456 S.W.2d 896 (Tex.1970). The information provided by Dun & Bradstreet was not sent indiscriminately to subscribers in general but was sent only to those subscribers who had requested the information concerning Datacon of Arlington, Texas, pursuant to the contractual arrangement with Dun & Bradstreet. The information was furnished only to those persons having a legitimate interest in the information. And the evidence establishes that no employee of Dun & Bradstreet knew that the August 3, 1977 report was erroneous at the time that the report was prepared or recklessly disregarded investigating the truth or falsity of the report. After reviewing the evidence before the Court in this motion for summary judgment, I find that there is no genuine issue of material fact present in this case; the report was furnished in good faith, and there was no "actual malice" sufficient to overcome the privilege to which the report was entitled.

Plaintiff argues that the *O'Neil* standard of actual malice does not govern this case. In *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809 (Tex.1976) the Court indicated that where an individual was not a public figure or a public official, all that was required in order to recover in a libel action was proof of negligence and not actual malice. The plaintiff argues that the *O'Neil*

Court combined common law and constitutional privilege in Texas by refusing to distinguish between cases involving different kinds of privilege when it said:

> The *New York Times'* definition of actual malice which this Court applied in *El Paso Times* is likewise applicable in the instant case, all three cases being libel suits, all three cases involving publishers' privileges, and all three cases requiring malice to overcome the privileges.

456 S.W.2d at 900.

The plaintiff completely misconstrues *O'Neil* and *Foster.* Foster did not address the issue of conditional privilege; *O'Neil* did address that issue. It is the plaintiff, and not the Texas Supreme Court, who has confused the common law and constitutional privilege in Texas. The quotation cited by the plaintiff is taken out of context. The Texas Supreme Court in *O'Neil* held that where a conditional privilege was asserted, the plaintiff must show actual malice. The Court then had to determine what definition of "actual malice" was proper. In that context, the Court noted that:

> "In *El Paso Times* this Court defined actual malice the same as did the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, that is, 'with knowledge that it was false or with reckless disregard of whether it was false or not.' The *New York Times'* definition of actual malice which this court applied in *El Paso Times* is likewise applicable in the instant case, all three cases being libel suits, all three cases involving publishers' privileges, and all three cases requiring malice to overcome the privileges. Insofar as the definition of actual malice is concerned, we do not think the instant case involving a conditional privilege is distinguishable from the *New York Times* and *El Paso Times* cases which involve First Amendment Constitutional privileges."

When the quotation cited by the plaintiff is read in context it is clear that the Texas Supreme Court was merely equating these

three cases, *O'Neil, El Paso Times* and *New York Times*, insofar as the definition of 'actual malice' was concerned, and not for any other purpose.

Therefore, I find no inconsistency between *O'Neil* and *Foster*, and I am bound to follow *O'Neil* under the Erie Doctrine.

I hereby grant defendant Dun & Bradstreet, Inc.'s motion for summary judgment.

It is so ORDERED.