RYDER TRUCK RENTALS,
INC., Appellant,

v.

Jack L. LATHAM, Appellee.

No. 6868.

Court of Civil Appeals of Texas,
El Paso.

Nov. 14, 1979.

Rehearing Denied Jan. 23, 1980.

Matthews, Nowlin, Macfarlane & Barrett, F. W. Baker, Judith R. Blakeway, C. Michael Montgomery, San Antonio, for appellant.

Law Offices of Pat Maloney, P. C., Pat Maloney, Jack Pasqual, Samuel C. Fried, Daniel V. Pozza, San Antonio, for appellee.

## OPINION

OSBORN, Justice.

This is a slander case. The Appellee, a truck driver, filed suit against Appellant, a

lease truck company, and obtained a jury verdict for $50,000.00 actual damages and $50,000.00 exemplary damages. We reverse and remand.

Jack Latham, age 51, has been a truck driver most of his adult life although he has worked at several other occupations. In 1976, he was working for Professional Drivers System, which assigned drivers to make hauls for various companies. Generally, he drove trucks leased from Ryder Truck Rentals, Inc. or some other leasing company. On March 5, 1976, Mr. Latham lost control of a Ryder truck and trailer in a rain and wind storm on Highway 281 and hit a utility pole and fence. Ryder paid $1,057.00 in property damage claims of third parties and spent more than $1,000.00 for repair of its equipment. In April, 1976, a Ryder truck driven by Mr. Latham dropped a valve and it was necessary to replace the engine at a cost of around $1,400.00. While driving a Ryder truck on May 17, 1976, he was involved in an accident on Interstate Highway 35 in San Antonio which resulted in approximately $300.00 in damages to the truck. There was substantial dispute in the evidence with regard to whether or not Mr. Latham was at fault in any of these three instances.

In June, 1976, Professional Drivers System was going to send him on a trip to Pennsylvania for Friederich Refrigeration. When he attempted to pick up a vehicle at Ryder, Jim Class, a rental agent, refused to let him have the equipment. At that time, Mr. Class checked with Virl Hundley, Ryder's service manager, and with Ray Edwards, Ryder's district rental manager, and they felt it would not be safe to let Mr. Latham drive on a cross-country trip with their equipment. Mr. Class called the traffic manager at Friederich Refrigeration and told him their decision was based upon Mr. Latham's previous experiences with their equipment.

Sometime in June or July, two other truck drivers, Mr. Brown and Mr. Sawyers, heard Mr. Hundley and Mr. Class say that they were going to fix Mr. Latham so he couldn't drive Ryder trucks because he was tearing up a lot of trucks.

In September, 1976, when Jack Latham was working for Drivers Lease Systems, he was assigned to a trip for Sitco Corporation to Alabama with Ryder equipment. At that time, he told Brenda Flora, the dispatcher, to check and see if he could drive Ryder equipment. She called Gene Getz, a Ryder rental agent, and was told that he could not driver Ryder trucks and that he was banned from driving their trucks.

In November, 1977, Mr. Latham moved to Houston where he has been employed as a truck driver and at the time of trial was earning a salary of $162.50 per week. There is some evidence in the record that he was making substantially more than that while working in San Antonio before Ryder prohibited his use of their trucks.

The jury found (1) that Appellant made oral statements to third persons that Jack Latham (a) was an incompetent driver, (b) abused their rental trucks and (c) that Ryder banned Latham from using Ryder rental trucks nationwide; (2) that such statements were substantially false and untrue; (3) that Latham received an injury to his reputation or good name as a truck driver; (4) the statements were a proximate cause of the injuries to his reputation or good name; (5) Ryder acted with malice toward Latham in regard to the statements made; (6) damages of $12,500.00 for past mental anguish, embarrassment and humiliation, $12,500.00 for future mental anguish, embarrassment and humiliation, $12,500.00 for loss or injury to Latham's character or reputation as a competent truck driver, $12,500.00 for financial injuries to his occupation as a truck driver; (7) exemplary damages of $50,000.00; and (8) the oral statements were not a privileged communication.

█ The first point of error asserts the trial Court erred in failing to submit a special issue inquiring whether the alleged statements were made by an agent or employee of Ryder "while acting within the scope and course of his authority and in furtherance of the company's business." Quite clearly, where there is a fact issue as to the "course and scope" of an employee in

performing a particular task which may give rise to an issue of liability upon the part of the master, that issue should be submitted for the jury's determination. 38 *Tex.Jur.2d*, Master and Servant, Section 247 at 503. In a slander case, an action is sustainable against a corporation for defamation by its agent, if such defamation is referable to the duty owing by the agent to the corporation, and was made while in the discharge of that duty. *Wagner v. Caprock Beef Packers Co.*, 540 S.W.2d 303 (Tex. 1976); *Texam Oil Corporation v. Poynor*, 436 S.W.2d 129 (Tex.1968). We believe the evidence shows conclusively that the service manager and rental agents for Ryder had a right to deal with customers and to refuse trucks to drivers, and to set forth their reasons for the refusal. Any statements made by Hundley as service manager, and by Class and Getz as rental agents, concerning the refusal to permit Mr. Latham to drive interstate trips with Ryder trucks were referable to their duty and made in the discharge of that duty. Point of Error No. 1 is overruled.

The next two points assert that as to the statements found to be made by Ryder employees, the Appellee invited or consented to the publication of such statements. In such a case, there may be no recovery. *Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770 (1945); *Renfro Drug Co. v. Lawson*, 138 Tex. 434, 160 S.W.2d 246 (1942); *Borden, Inc. v. Wallace*, 570 S.W.2d 445 (Tex.Civ. App.—El Paso 1978, writ dism'd).

We agree that as to the statements made to Brenda Flora the publication was invited. The call to Ryder by Brenda Flora was at the request of Mr. Latham. He certainly could have expected that if permission to drive a Ryder truck was denied a reason would be given by the Ryder rental agent. But, there was no invitation or consent with regard to the statements made to the two other truck drivers, Brown and Sawyers, that Latham was "tearing up our trucks" and that "he was tearing up engines and blowing engines" and that he was blackballed from driving for Ryder. The same thing applies with regard to the

call to the traffic manager at Friederich Refrigeration who was told that Ryder would no longer do business with Latham "due to his driving record." Points of Error Nos. 2 and 3 are sustained as to one of the conversations but not as to the others.

The next eight points attack the legal and factual sufficiency of the evidence to establish proximate cause of injury and to establish each of the elements of damages awarded to Appellee. Courts have traditionally held that slander which affects a party in his business, trade or calling requires no proof of damage. Proof of the defamation itself has in the past been considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount. Prosser, *Law of Torts*, (4th ed. 1971) Sec. 112 at 754. In *Bayoud v. Sigler*, 555 S.W.2d 913 (Tex.Civ.App.—Beaumont 1977, writ dism'd), the Court noted that words relating to the incompetency of one in his profession or calling are actionable per se. The Court said: "It is not necessary to prove actual damages where the words used are libelous per se. The law presumes actual damages."

In *Houston Belt & Terminal Railway Company v. Wherry*, 548 S.W.2d 743 (Tex. Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), cert. denied, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977), the Court, in passing on the issue of damages in a libel case, noted that the law infers or presumes general damages which are recoverable without proof that they have been incurred, and this includes injuries to character or reputation, injuries to feelings, mental suffering or anguish and other wrongs and injuries incapable of money valuation. Also see: *Bell Pub. Co. v. Garrett Engineering Co.*, 141 Tex. 51, 170 S.W.2d 197 (1943); and *Whalen v. Weaver*, 464 S.W.2d 176 (Tex. Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.).

But the validity of such rule must now be questioned in view of the holdings in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), that all awards must be

supported by competent evidence. Clearly, that is the rule in cases involving media defendants. In the *Gertz* case, the Court said:

> For the reasons stated below, we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.
>
> The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may away substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred. The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.
>
> We would not, of course, invalidate state law simply because we doubt its wisdom, but here we are attempting to reconcile state law with a competing interest grounded in the constitutional command of the First Amendment. It is therefore appropriate to require that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved. It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury.

Subsequent to that decision, the Court in the *Firestone* case said: "*Gertz* established,

however, that not only must there be evidence to support an award of compensatory damages, there must also be evidence of some fault on the part of a defendant charged with publishing defamatory material."

■ When the Court in the *Wherry* case considered the issue of damages, it assumed *Gertz* applied only to media defendants, and thus concluded that injury to Wherry's reputation was presumed and, with that injury presumed, his mental anguish could be taken into consideration in awarding damages. We do not make that same assumption. A review of the opinion in *Gertz* indicates that the restriction upon the award of damages in defamation cases was made to protect "the vigorous exercise of First Amendment freedoms." *Gertz v. Robert Welch, Inc.*, supra, 418 U.S. at 349, 94 S.Ct. at 3012. Obviously, First Amendment freedoms include just as much the exercise of free speech as the right of freedom of press.

> In short, said the Court, [in *Gertz v. Welch*] the private defamation plaintiff who establishes liability under a less demanding standard than that stated by *New York Times* may recover only such damages as are sufficient to compensate him for actual injury. 3A Personal Injury—Actions ● Defenses ● Damages, Defamation sec. 3.07[4]

In *Jacron Sales Co., Inc. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1968), the Court concluded that as a matter of state law the *Gertz* holding should apply to media and non-media defendants alike. In that case, the Court adopted the standard of liability as set forth in *Restatement (2d) of the Law, Torts 2d*, Sec. 580B (1977), in cases of purely private defamation.

In *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex.1976), the Court discussed at some length the standard of care to be used in deciding liability in a libel case involving a private plaintiff. It adopted a negligence standard but coupled it with the "actual injury" requirement established in *Gertz* and noted that this standard "has the capability of achieving a fair balance be-

tween the competing interests at stake." We are thus compelled to apply the "actual injury" requirement.

■ In this case, there is no evidence as to mental anguish, embarrassment or humiliation suffered by Mr. Latham in the past or with regard to such elements of damage in the future. In order to recover for mental anguish, it is necessary to show something more than mere worry, anxiety, vexation or anger; the proof must show intense pain of body or mind, or a high degree of mental suffering. *Cactus Drilling Company v. McGinty*, 580 S.W.2d 609 (Tex.Civ.App.—Amarillo 1979, no writ). We sustain Appellant's Points of Error Nos. 6 and 7. With regard to damages for injuries to his reputation and occupation as a truck driver, there was some evidence to sustain the jury's findings. The Appellee is no longer doing long distance hauling and is primarily engaged in local hauling for one employer. There is some evidence of reduced income since 1976. Much of Mr. Latham's complaint is with regard to his wages at $4.00 per hour as compared to union wages of $11.00 per hour. But, he admitted he is not a union driver and thus he would not be making those wages whether he had been slandered or not; therefore, such evidence was not relevant to any issue in this case. But, there is other evidence of reduced wages which supports the jury findings. We overrule Points of Error Nos. 4, 5, 8, 9, 10 and 11.

■ The next three points of error raise questions as to whether the statements made about Latham were privileged and whether the trial Court properly defined malice. Where a communication is fairly made in the discharge of a public or private duty, or in the conduct of one's own affairs, to one who has a corresponding interest in receiving such communication, the communication is privileged. Certainly, the communication to the traffic manager at Friederich Refrigeration and to Brenda Flora, the dispatcher at Professional Drivers Service, would come within this rule. But, this privilege is lost when the communication is made with "actual malice." *Dun*

*and Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896 (Tex.1970).

In our case, the Court defined malice in its charge as:

Ill will, bad or evil motive, or such gross indifference to rights of plaintiff as amount to a willful or wanton act done intentionally and without just cause or excuse on the part of the party accused of such action.

The definition as given was the same as the one given in the *Wherry* case. The Appellant, relying upon *Gertz v. Robert Welch, Inc.*, supra; *New York Times Company v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); and *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403 (Tex.1969), asserts that the Court should have instructed the jury, as it requested, that malice means that "the statement, if any, was made with knowledge that it was false or with reckless disregard of whether it was false or not."

■ In *Southwestern Bell Telephone Company v. Dixon*, 575 S.W.2d 596 (Tex. Civ.App.—San Antonio 1978, writ pending), the Court defined "malice" similarly to the definition given in this case and "actual malice" in the terms which Appellant requested in this case. But, the issues about publication inquired if the slander was "with knowledge that it was false or with reckless disregard of whether it was false or not?" Thus, the jury finding was as to "actual malice." In discussing the issue of privilege, the Appellate Court said: "It is apparent that the case was submitted to the jury on the theory that the defense of conditional privilege could be overcome only by a showing of knowledge of falsity or with reckless disregard of whether it was false or not." We believe that is the proper standard.

The *Restatement (2d) of the Law, Torts 2d* Section 600 (1977), says:

[O]ne who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he

(a) knows the matter to be false, or

(b) acts in reckless disregard as to its truth or falsity.

Comment (b) under this Section notes that reckless disregard as to truth or falsity exists when there is a high degree of awareness of probable falsity or serious doubt as to the truth of the statement. This requirement results at least in part from changes in the defamation law as developed in *Gertz v. Robert Welch, Inc.*, supra, and particularly the holding that there could be no recovery based on strict liability, but only upon some basis of fault, such as negligence. In *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809 (Tex.1976), the Court adopted the negligence standard as a basis for recovery when coupled with the "actual injury" requirement established in the *Gertz* case. Of course, those cases involve media defendants and the cases are unclear as to the test to be applied in a case involving a private plaintiff and a non-media defendant. See *Southwestern Bell Telephone Company v. Dixon*, supra, and *Roegelein Provision Company v. Mayen*, 566 S.W.2d 1 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

But prior to these decisions, the Court in *Dun and Bradstreet, Inc. v. O'Neil*, supra, held in a case involving a merchantile agency which provided credit information to its subscribers ·that a conditional privilege could only be lost upon a showing of "actual malice," meaning "with knowledge that it was false or with reckless disregard of whether it was false or not." Although that opinion uses language about a "publishers' privilege," we do not believe that case can be categorized as one involving a "media defendant." The Court in its opinion noted that the· credit reports were sent only to subscribers and claimed to be of a confidential nature. The Court said: "Defendant is a merchantile agency which provides credit information to its subscribers under a subscription agreement. The credit reports state that such information is furnished in strict confidence." We would categorize this case as one involving a private plaintiff and a non-media defendant. But see: *Southwestern Bell Telephone Company v. Dixon*, supra, at 600, and *Roegelein Provision Company v. Mayen*, supra, at 10.

Having recognized that the *Foster* case adopted the negligence standard as a basis for recovery under the *Gertz* holding, and having concluded that the *O'Neil* case applied the "actual malice" standard in a non-media case, we necessarily reach a result consistent with the statement in Comment (b) of Section 600, *Restatement (2d) of the Law, Torts 2d* (1977), which states:

> One consequence of the holding is that mere negligence as to falsity, being required for all actions of defamation, is no longer treated as sufficient to amount to abuse of a conditional privilege. Instead, knowledge or reckless disregard as to falsity is necessary for this purpose.

In *Datacon, Inc. v. Dun & Bradstreet*, 465 F.Supp. 706 (N.D.Tex.1979), the Court applied the "actual malice" rule in another case involving a non-media defendant, and in doing so concluded that there is "no inconsistency between *O'Neil* and *Foster*." We reach that same result in our holding in this case.

One of the most recent libel cases involving a non-media defendant is *British Overseas Airways Corporation v. Tours & Travel of Houston, Inc.*, 568 S.W.2d 888 (Tex.Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). In that case, the Court was concerned with the issue of whether a qualified privilege was lost because it was made with malice. The Court said:

> A finding of malice may be supported by evidence that a false credit report has been circulated with knowledge of its falsity or with a reckless disregard of its truth and accuracy. *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896 (Tex.1970); 40 A.L.R.3d 1049, 1055.

The results we reach are in accordance with those in the *British Overseas Airways Corporation* case of applying the *O'Neil* holding in a non-media case. Also see: 3A Personal Injury—Actions ● Defenses ● Damages sec. 104[3][b][ii].

■ We sustain the Appellant's Point of Error No. 14, and hold that the trial Court erred in the manner in which it defined malice, and that it should have given a definition as to whether the communication

was made with knowledge that it was false or in reckless disregard of whether it was false or not. See *Southwestern Bell Telephone Company v. Dixon,* supra, Question 3 at 600 and Question 18 at 601; and *Roegelein Provision Company v. Mayen,* supra, at 9 as to Issue 16. This holding requires that the case be reversed and remanded to the trial Court for a new trial.

 It is not necessary for us to pass upon the remaining points of error other than to note that we believe the trial Court properly excluded records of prior suits brought by the Plaintiff to recover damages for injuries alleged to have resulted from his impaired ability to work as a truck driver, where on cross-examination Mr. Latham readily acknowledged each of the contentions attributed to him with regard to prior injuries and resulting disabilities.

The judgment of the trial Court is reversed and the case is remanded for a new trial.

### ON MOTION FOR REHEARING

PRESLAR, Chief Justice.

I respectfully dissent. I would not apply the *Gertz* holding to this case which does not involve the media. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The majority holding is in conflict with *Houston Belt & Terminal Railway Company v. Wherry,* 548 S.W.2d 743 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), cert. denied, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977). Contrary to the majority, I would assume *Gertz* and *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809 (Tex.1976), apply only to media cases. In a democracy, where the people rule, they must be informed and to that end those with knowledge of public officials should not be inhibited or in fear of speaking out. The courts give such authors the protection of the First and Fourteenth Amendments. When an individual, not a public official, is injured by the words of another, the reason for the First and Fourteenth Amendments protection does not exist. Redress of private wrongs by one individual against another is not founded on "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include the vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Quotation from *New York Times Company v. Sullivan,* 376 U.S. 254 at 270, 84 S.Ct. 710 at 721, 11 L.Ed.2d 686 (1964).

Respectfully submitted.